THE STATE v. GEORGE BUBENYAK, Appellant.—56 S. W. (2d) 43.

Division Two, December 14, 1932.

*Murrell & Murrell* for appellant.

*Stratton Shartel,* Attorney-General, and *C. A. Powell,* Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Appellant was found guilty of the charge of murder in the first degree for shooting and killing his mother-in-law, Mary Martinka, in Adair County, and his punishment was assessed at imprisonment in the State Penitentiary for life. His motion for a new trial having been overruled and final judgment rendered in accordance with the verdict, he took an appeal. We have not had the aid of a brief on behalf of appellant, assigning errors of the trial court. But no assignment of errors is necessary in an appeal in a criminal case (Sec. 3760, Vol. 4, Stat. Ann.), and it is our statutory duty to render judgment upon the record before us.

I. The State raises two preliminary questions. The first is that only the record proper is for review because it does not affirmatively show that a motion for a new trial was filed at the same term during which the verdict was rendered. The second is that the appeal should be dismissed because the record proper does not affirmatively show that the application for appeal and the order granting the same were made at the same term at which sentence

was rendered. The record proper shows that the trial of appellant was begun in the Circuit Court of Adair County, Missouri, on February 9, 1931, and was concluded by the return of the verdict of the jury on February 11, 1931; that appellant, by leave of court, filed his motion for a new trial on February 16, 1931; that the motion was overruled on February 18, 1931, and on the same day allocution was had and sentence was imposed by the final judgment rendered; that on the first day of May, 1931, appellant filed his application for appeal and an appeal to the Supreme Court was granted. The court takes judicial notice of the days of the week and of data of the calendar. February 11, 1931, fell on Wednesday. February 16, on which day the motion for a new trial was filed, was Monday. Sunday, February 15, having intervened, the motion for a new trial was filed within four days. The court takes judicial notice of Section 2004, Revised Statutes 1929, providing that the terms of court shall be held in Adair County, commencing on the third Monday in January and the third Monday in May and the fourth Monday in August and the fourth Monday in October, and that this statute was operative in the year 1931 at the times stated in the proceedings epitomized from the record proper. [Nickey et al. v. Leader, 235 Mo. 30, 138 S. W. 18, 1. c. 21.] We therefore know that the motion for a new trial was filed during the January Term, 1931, which was the same term in which the trial was had, and within four court days after the trial, and that the application for appeal was filed and granted during the same term. The record proper also shows that appellant's motion for a new trial and also his affidavit and application for appeal were filed "by leave of court" and therefore that the court was in session on the respective days on which those proceedings were had. [Nickey v. Leader, supra.] In State v. Blanchard (Mo.), 326 Mo. 965, 33 S. W. (2d) 937, cited by the State, this court merely held that the record proper showed that the verdicts were returned on Thursday, April 11, 1929, and that the defendants filed their motion for a new trial on Wednesday, April 17, 1929, and therefore that the motion for a new trial was out of time. In State v. Brown, 312 Mo. 340, 279 S. W. 98, cited by the State, the record proper failed to show the filing of the motion for a new trial or the filing of the bill of exceptions. The record proper in the instant case is not wanting in those essentials. On the authority of Nickey v. Leader, supra, this point is ruled against respondent.

II. The facts in the case are simple and may be briefly stated. Appellant, for a number of years, worked in the coal mines of Adair County, near Kirksville, Novinger and Tipperary. In the later

years of his employment he resided on a small farm in the outskirts of Kirksville with his wife and son, George Bubenyak, Jr. Older daughters had obtained employment and were living in large cities. Mary Martinka, mother-in-law of appellant, about seventy-six years old at the time of her death on September 8, 1930, made her home with her daughter and son-in-law for about seven years before she was killed. For about a week before September 8, 1930, appellant lodged with a family named Ronchetto at Tipperary where, at the time, appellant was working in a mine. He had decided to go to West Virginia to work as a miner and to have his son, George Bubenyak, Jr., fifteen years old, drive him there. For this purpose, George, Jr., drove the family car from the home near Kirksville to the home of Ronchetto in Tipperary on September 8, 1930. When the son arrived, the father rode with him from Tipperary to Kirksville. There appellant entered the hardware store of Robert Clark & Sons and purchased a box of 38 caliber revolver shells. Next, appellant drove with his son to Novinger, passing his home on the way, but not entering. At Novinger he visited the store of J. B. Kriner, a hardware merchant, and asked Mr. Kriner to sell him a revolver, but Mr. Kriner told him that it was against the law to sell a revolver except to a person having a permit, and no sale was made. From Novinger, appellant and his son returned to Tipperary and thence in the afternoon they drove to appellant's home. Tony Ronchetto, a youth about seventeen years of age, accompanied the father and the son in their travels on September 8, and went with them to the family home in the outskirts of Kirksville in the afternoon.

Father and son entered the kitchen of the home where Mrs. Bubenyak was making jelly and her mother, Mary Martinka, was sitting on a low chair stemming grapes. George Bubenyak, Jr., testified that his mother left the kitchen as soon as the father entered and the appellant, in passing through the kitchen, stopped at a point about three feet from Mary Martinka, drew a pistol and fired one shot. The bullet entered the left temple of the aged woman, passed through her head and made its exit back of the right ear. She fell to the floor dead. Appellant then went upstairs and fired three more shots which, in his confession, he stated he fired for the purpose of taking his own life. None of the three bullets struck him, however, and he returned downstairs and left the house taking a butcher knife with him. Through woods and along by-ways he went to Kirksville and took a train to Kansas City. Officers at Milan, Missouri, placed him under arrest, removed him from the train and returned him to Kirksville. Appellant in his written confession stated that when he drove to his home on the afternoon of

September 8, 1930, he had the loaded revolver in his pocket. He also stated that when he entered the kitchen he asked his wife to prepare food for himself and the son for their journey to West Virginia. The wife stated that she did not want to ever fix anything for him any more and did not desire to see him again. She ran out of the kitchen and, by his written statement, he then shot and killed his wife's mother as has been stated. He also said in his statement that the shots which he fired upstairs were for the purpose of killing himself.

The defense was insanity. Several witnesses who had worked with him in the mines of Adair County testified that for about a year before the tragedy on September 8, 1930, appellant was moody, worried, absent-minded, uncommunicative and at times given to walking up and down with his hands behind his back, his head drooping, and his eyes staring. There was evidence also that, after the mother-in-law came to live in the family, appellant and his wife quarreled at times about the property which was subject to mortgage and, at the time of the killing, in danger of being lost.

In his motion for a new trial, appellant assigns as error an instruction on murder in the first degree, given by the court. The objection is that there was no evidence that appellant shot and killed Mary Martinka deliberately, premeditatedly and with malice. In our opinion there was substantial evidence to make an issue of fact to be determined by the jury under proper instructions whether the act of appellant had in it the elements of murder in the first degree. As has been told, he bought cartridges in Kirksville on the morning of the tragedy. He tried to purchase a pistol in Novinger. He passed his home without stopping, on his way to Novinger. In his written confession he stated that he had in his possession, when he entered his home a 38 caliber loaded revolver, and that he had decided he would kill his wife, his mother-in-law, and maybe himself if his wife did not fix up lunch for his trip to West Virginia. The coroner identified a 38 caliber revolver, found on a table in the kitchen of the Bubenyak home near the body of the dead woman. There was in the weapon but one loaded cartridge. Four empty shells were found on the premises. The court instructed the jury upon all questions of law arising in the case, and particularly on the defense of insanity. In these circumstances the instruction on murder in the first degree was properly given.

III. Appellant in his motion for a new trial assigns as error the refusal of the trial court to give to the jury his instructions A and B. Refused Instruction B withdrew from the jury the testimony of the prosecuting attorney to the effect that after he had typed appellant's confession and had read it to him four times, he, the

prosecuting attorney, at the instance of appellant, changed with pen and ink from "58" to "48" years the stated age of appellant, and that at one point he struck out the name of the town Tipperary and inserted the name of the town Novinger. We see no merit whatever in the assignment as to Instruction B. The testimony of the prosecuting attorney was undisputed and it was supported by the testimony of several other witnesses that the corrections stated were made at the instance of appellant and before appellant signed the confession.

█ Refused Instruction A withdrew from the jury the testimony of the prosecuting attorney relating the circumstances under which appellant made his written confession. The prosecuting attorney testified in narrative form. After he had stated his name and office, counsel for appellant said he thought the witness should ask himself questions. The court indicated that it would appoint counsel for appellant to inquire if he wished. At the same time the court made clear that it did not take seriously the suggestion of appellant's counsel and directed the prosecuting attorney to go ahead with his testimony. This he did without further objection, or interruption. The State closed its case with the testimony of the prosecuting attorney, and appellant then moved the court to strike out all the testimony of the prosecuting attorney for the reason that no questions were propounded to him and appellant did not have an opportunity to object to incompetent evidence given by the witness and to anticipate or determine what the answers would be. The court overruled appellant's motion to strike and stated that if there was any evidence which appellant considered was improper to which he wished to object the court would hear the objections. Appellant's counsel did not act upon this suggestion for the stated reason that they could not at the time point out specifically the testimony which they thought should be striken. We find no inadmissible testimony in the narrative of the prosecuting attorney and upon the record presented to us, the action of the trial court in refusing to grant appellant's instructions A and B is not before us for review.

█ IV. Appellant's motion for a new trial also assigns error for the failure of the trial court to reprimand the prosecuting attorney for improper and prejudicial remarks and for the failure of the court to discharge the jury and continue the cause. This assignment is also without merit. The bill of exceptions sets out in full the addresses to the jury of the prosecuting attorney and of the attorneys for appellant. These addresses were temperate and, in form and substance, designed to aid the jury in its verdict. Appellant's counsel commented on the fact that the chief of police of Kirksville had observed and conversed with appellant in the county jail and

had given it as his opinion that appellant was of sound mind. He then reminded the jury that the sheriff of the county, who was the official custodian of the jail and had opportunity to observe appellant, had not been called to testify as to his sanity. In reply to this the prosecuting attorney stated that appellant, if he so desired, could have called the sheriff. The prosecuting attorney then added: "There were a number of witnesses the State could have called that we did not call to prove . . ." To this last statement objection was made and the motion to discharge the jury was offered. The court directed the jury to disregard the remark of the prosecuting attorney and at the same time it overruled the motion to discharge. We do not find that the trial court abused its discretion in this matter.

The information is in approved form. Appellant's demurrers were properly overruled. Allocution was accorded to appellant before judgment was rendered. Appellant was given a fair trial and the judgment should be affirmed, which is accordingly done. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.