**CITY OF GLADSTONE, Missouri, Appellant-Plaintiff,**

v.

**Milton and Shirley KNAPP, Respondents-Defendants.**

**No. 25409.**

Kansas City Court of Appeals, Missouri.

Oct. 5, 1970.

Robert K. Waldo, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, for appellant-plaintiff.

Jerry Conkling, Broome & Conkling, Kansas City, for respondents-defendants.

FLOYD L. SPERRY, Special Commissioner.

This is a condemnation proceeding instituted by the City of Gladstone against defendants. Trial to a jury resulted in a verdict and judgment for defendants in the sum of $2,000.00. Plaintiff has appealed.

Plaintiff presents two contentions of error. The first is that the court erred in giving Instruction No. 3. The second is that the court should have sustained plaintiff's motion for a new trial because the verdict is excessive under the evidence.

Defendants are the owners of lot 34, Linden Plaza, located within the City of Gladstone. Plaintiff's Exhibit No. 1, filed herein, indicates that this tract is rectangular, measuring 208.5 feet east-west, by 108.5 feet north-south. Defendants and

their four children live in a dwelling house located on the eastern portion of the tract. Plaintiff sought condemnation of a strip of land 10 feet wide, for sewer purposes, running in a northerly-southerly direction, across the tract and, roughly, bisecting it. This strip runs across the defendants' driveway, which driveway runs from 72nd Terrace N., to defendant's dwelling house. The strip is 116 feet in length.

Defendants' Exhibit A, disclosed that plaintiff had easements across the back (north) of defendant's property, under and through which this sewer line could have been constructed, directly to a sewer line running along North Walnut street, a north-south street bordering defendants' property on the west. The evidence was that this condemned strip of land might be torn up at any time that plaintiff saw fit, for the purpose of making repairs on the sewer line thereunder, and defendants could not fill the overlying surface so as to complicate the maintenance and repair of the sewer line. Defendants are prohibited from building any permanent structure over the surface of this strip. Plaintiff's position is, and was so at the trial, that defendants have not been damaged by the condemnation of the strip involved but that, in fact, they have benefitted and that the value of their property has been thereby enhanced.

Plaintiff's contention in this regard is based on its theory that construction of the sewer (defendants' house had previously been served by a septic tank) made it legal for construction of another residence on the west part of the lot, facing Walnut street, whereas, prior thereto, Clay County ordinances prohibited same. Mr. Knapp, in his testimony, stated his reasons for his contention that his lot had not benefitted in that respect.

Mr. Knapp stated that defendants are the owners of the property; that the dwelling house located thereon fronts on 72nd Terrace its entire length, 208.5 feet, and abuts on Walnut street its entire depth, 108.5 feet. He stated that defend-ants purchased the property in 1959 for the sum of $22,750.00; that the house is a "one level" structure with four bedrooms; that there is a basement on one end; that there is a "drive in" garage leading from the driveway. There is a living room, kitchen, and two bathrooms.

Mr. Knapp stated that, after the sewer was constructed, the driveway was not properly compacted and settled so that the surface was much lower than before construction; that the surface was uneven; that, prior thereto, the driveway was smooth, the surface level, and that there was a slight pitch downward which was conducive to excellent drainage; that the pitch has been damaged; that he has rocked the driveway twice since the sewer was constructed, in an effort to restore it to its previous condition; that it had previously been bordered with concrete blocks laid so as to create a graceful curve, but that they were not properly replaced and would have to be relaid; that plaintiff had a 50 foot temporary easement; that plaintiff failed to fully re-sod the entire 50 foot strip, twenty five feet on each side of the sewer line; that plaintiff dug up a lilac bush and reset it but that it died. He gave it as his opinion that the fair market value of the entire property, prior to the taking, was $30,000.00 and that, immediately after the taking, it was worth $24,000.00; that the damage was $6,000.00; that he was assessed, for the contruction of the sewer, a total of $1,219.69. He stated that plaintiff had a sewer easement along the "back" (north) of his lot, leading to a sewer under North Walnut street, which is, in fact, the line into which the newly constructed line will discharge.

On cross examination he stated that he had made an effort to keep informed regarding property values. He stated that the west half, or that part of his lot lying west of this condemned 10 foot strip, and which fronts 108.5 feet on North Walnut street, is unfit for residential building purposes because it is low lying; that the surface water from property located to the

carried with it leaves, mud and other debris, which was deposited in the area. He stated that he cured this condition by construction of a concrete flume running from the north edge of his lot, in a southwesterly direction, to 72nd Terrace. This flume is shown on plaintiff's Exhibit No. 1 and, roughly, parallels the sewer line, several feet to the west thereof. He stated that, in order to render that portion of the lot suitable for building purposes, it would have to be filled, and that such a fill would back surface water onto adjoining property.

Plaintiff offered evidence to the effect that, under the ordinances, each family residence in that area must occupy a lot of not less than 15,000 square feet, but if the lot was served by a sanitary sewer, the lot might occupy 7,500 square feet.

Plaintiff's evidence was also to the effect that the sewer line, in this case, was located as it was because it follows the natural drainage line that nature has provided at that location; that the sewer line could have been extended straight across to North Walnut street through existing easement (heretofore mentioned) but that it would have required a much deeper excavation; that, by following the existing easements, the cost to plaintiff would have been much greater. It was also shown in evidence that drainage of surface water via the flume could be altered by installation of a large storm sewer pipe; that the lot here involved, contained 22,500 square feet; that, after this construction, there is no reason why a second house may not be built on lot 34; that, prior to this construction, from an engineering standpoint, it would have been necessary for a dwelling house lot to have at least 15,000 square feet in order for the soil in the area to absorb the sewage from a septic tank; that, therefore, there could be but one house on lot 34.

Plaintiff offered the testimony of a qualified witness who stated that the value of the entire property, lot 34, including the house thereon, before the taking in 1967, was $23,000.00; that, after construction of the sewer, the value was $26,700.00. The witness stated that because of the requirements regarding the size of residential building lots prior to the construction of the sewer, and such requirements since, defendants now have a building lot which they did not previously have; that such lot is of the value of $3,500.00.

The court gave Instructions No. 2 and No. 3. They are as follows:

"INSTRUCTION NO. 2.

Your verdict must be for defendants, Milton and Shirley Knapp, if you believe that defendants have been damaged by either or both of the following:

1. The taking of the rights.

2. The uses which plaintiff has the right to make of the rights to be taken".

"INSTRUCTION NO. 3.

You must award defendants, Milton and Shirley Knapp, such sum as you believe was the difference between the fair market value of the defendants' whole property immediately before the taking on June 20, 1967, and the value of defendants' remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken".

Plaintiff contends that Instruction No. 3 is prejudicially erroneous because thereby the jury was informed that "you *must* award defendants, * * * such sum * * *". That it was prejudicially erroneous to inform the jury that it *must* award damages to defendants because plaintiff had introduced substantial evidence tending to prove that defendants were not damaged but were, in fact, benefitted in that the value of their property was increased.

Instruction No. 3, is, in fact, Instruction 9.02 MAI edition 1965. Defendants state

that, because of the admonition in notes on use thereof, they also gave Instruction No. 2 herein, which is, in fact, MAI 26.05, as it appears in MAI 1965 edition, page 220.

Plaintiff's say that "Instruction No. 4" as found in No. *35.09* of *MAI 1969,* should have been given. Defendants state: "The 1969 MAI revisions took effect on Monday September 1, 1969, a legal holiday. The trial commenced the following day and the instructions were submitted to the jury the morning of September 3, 1969. It was not until the following day that the attorneys for the litigants and the Clay County circuit court received the new revised instructions (1969 edition) from West Publishing Company, the only source".

Defendants contend that Instruction 35.-09 MAI *1969,* is only a combination of 26.-05, MAI 1965 and 9.02 MAI 1965. Plaintiff has not disputed or challenged the above statement of defendants. The instructions, when read together, as they should be, properly declare the law. Colonial Construction Company v. Sharp Industries, Inc., Mo.App., 421 S.W.2d 551, 557.

■ ■ The record before us discloses that the trial began September 2, 1969, and that the case was submitted to the jury September 3, 1969. We will take judicial notice of the fact that September 1st, 1969, fell on Monday, which was Labor Day, a legal holiday. It was ordered by the Supreme Court *en banc* that such revised rules shall be effective as of September 1, 1969. Page 18 (Roman Numerals) of 1969 edition, MAI.

Under the peculiar facts and circumstances here shown we must hold that the giving of Instruction No. 3 did not constitute the commission of prejudicial error.

■ Plaintiff also contends that the verdict is excessive under the evidence. We have set out the evidence rather fully because of this contention. Plaintiff's chief argument in support of its contention that the lot was increased in value is that the lot will now support two houses instead of one. The evidence is not at all clear that defendants, prior to construction of this sewer, were precluded from construction of a second house on their lot.

Plaintiff's sole witness as to the value of the property as a whole, before taking, and of the remainder after taking, was a paid "expert". He had *never* seen the *inside* of the house, and had never seen the outside, so far as the record shows, until two years after the date the property was taken. He based his opinion of $3700.00 accretion in value upon his belief that construction of the sewer had "created" a new building lot, of the value of $3500.00, and had increased the value of the "lot", where the house stands, in the amount of $200.00, because the house is now served by a sewer instead of by a septic tank. The jury could have believed that this testimony had but little probative value.

The testimony of Mr. Knapp was to the effect that the west part of the lot is now not suitable for the construction of a dwelling house thereon. Mr. Knapp's testimony was competent and constituted substantial evidence. He also testified to the effect that the property was damaged by the taking in the amount of $6000.00. The jury's verdict of $2000.00 is supported by substantial evidence and will not be disturbed. State ex rel. N. W. Electric Power Co-op., Inc., v. Stewart, Mo.App., 440 S. W.2d 146, 152.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of FLOYD L. SPERRY, Special Commissioner, is adopted as the opinion of the court. All concur.