**STATE of Missouri, Respondent,**

v.

**Chester GANTT, Appellant.**

**No. KCD 26330.**

Missouri Court of Appeals,
Kansas City District.

Dec. 31, 1973.

Robert A. Simons, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Daniel P. Card, II, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., SWOFFORD and WASSERSTROM, JJ.

SWOFFORD, Judge.

The appellant (herein called defendant) was convicted of feloniously uttering a forged check, a violation of Section 561.-011, subd. 1(3) RSMo 1969, V.A.M.S. A jury found him guilty and assessed his punishment at ten (10) years. Thereafter, the trial court reduced this punishment to four (4) years and judgment and sentence were entered accordingly. This appeal followed in due time and in proper form.

The points as asserted by the defendant and upon which he seeks reversal may be stated as follows: *First*, the court committed reversible error by failing to instruct the jury on the weight and effect of circumstantial evidence; *Second*, it was error to give Instructions No. 3 and No. 5 because they did not correctly state the law of the case; *Third*, the court should have directed a verdict of acquittal or sustained defendant's motion for a new trial because the evidence was insufficient to support the verdict; *Fourth*, it was plain error to permit the defendant to be called by the state as a rebuttal witness in order to show his prior felony convictions; and *Fifth*, it was plain error to permit the state to call rebuttal witnesses for the purpose of offering cumulative evidence.

The points in appellant's brief do not comply with the requirements of Rules 28.18 and 84.04(d), V.A.M.R. It continues to be a source of wonder and complete frustration to this Court, that counsel do not comply with the simple and specific provisions of these Rules when preparing briefs on appeal. Once again, however, we will overlook this default because a person's liberty is at stake, and we will consider each of these "points". In order to do so, a review of the evidence is necessary.

It is not disputed that in the evening of either February 25 or 26, 1972 (the importance of these dates will hereafter appear) that defendant entered a package liquor store known as "The Party Place" in Liberty, Clay County, Missouri and purchased some liquor and cigarettes. In payment therefor he tendered a check drawn on a Liberty bank by one Hammond, dated February 25, 1972, payable to "Cash" in the amount of $20.00. The clerk accepted the check without requesting identification in accordance with the store policy of accepting checks drawn on local banks. The defendant did not sign the check nor endorse it in the presence of the store clerk nor was he requested to do so. He left the store with the merchandise and some change representing the difference between the check and the cost of the purchases.

The state's evidence further established that later that evening the clerks in "The Party Place" found that the name of Hammond was on a list of "problem checks" in the store and Harold Achauer, the store

owner, was contacted for instructions. Achauer was suspicious because he had sold Mr. Hammond some liquor at another of his stores that same day so he called *Mrs.* Hammond in an attempt to ascertain if her husband had in fact written the check here involved. She told him that her husband had not written the check. She and Achauer then immediately went to the police station and she signed a complaint against the defendant. Patrolman James Houston, that same evening, arrested the defendant and he remained in custody thereafter.

Mr. Hammond did not testify because he died on March 1, 1972, some four days after the check was cashed.

Mrs. Hammond testified for the state that she was familiar with her husband's signature and that the signature on the check was not that of Mr. Hammond. The check was introduced into evidence and identified as a "counter-check", one without a personalized name and address imprinted on it. Mrs. Hammond testified that her husband had discontinued using such "counter-checks" when he received a supply of personalized checks from the bank sometime prior to February 26, 1972. She further noted that the first name signed on the check was incorrectly spelled *NORVELLE*, when, in fact, her husband's name was *NORVAL*.

On cross-examination it was brought out that Mr. Hammond "was drinking quite a bit" shortly before his death. She further testified that when he was under the influence of alcohol his handwriting became quite poor and bore no resemblance to his normal handwriting which she described as "beautiful". She testified that when drinking, Mr. Hammond's signature could not be recognized and that "I couldn't read it".

The last witness for the state was James Houston, the police officer who investigated the complaint filed by Mrs. Hammond. Officer Houston testified that he arrested the defendant, administered the "Miranda Warning" and questioned Gantt about the check. Houston said Gantt admitted cashing the check; that he (Gantt) felt it was a good check, *and that the check was given to him by a third party*. However, Gantt refused to disclose who gave him the check because "he didn't want to get anybody else involved". Officer Houston testified on cross-examination that he did not question Mr. Hammond to determine the genuineness of the signature on the check and to the best of his knowledge no other officer contacted or questioned Norval Hammond. The sole basis for the arrest was *Mrs.* Hammond's complaint.

The defendant, Chester Gantt, testified in his own behalf. His story differed in major detail from that of the State's witnesses. Gantt testified that he had gone to Hammond's home on a social visit and while there he and Hammond drank alcoholic beverages together. As the defendant prepared to leave, Hammond requested that he (Gantt) purchase additional liquor and cigarettes and bring such items to the Hammond home the next morning. The defendant said that Hammond produced a check and attempted to fill in the blanks, but was unsuccessful because his condition impaired his ability to write. Hammond then produced a second check and filled in the blanks and signed it while the defendant watched.

The defendant testified that he took the check to the liquor store, purchased the items for Hammond, and took them to Hammond the following morning. However, defendant could not explain why Hammond would misspell his own first name.

At the conclusion of Gantt's testimony, the defense rested. The prosecutor then stated:

"MR. BURNETT: I am trying to find Mr. Smithart (another police officer) Your Honor. May I have a five-minute recess to see whether or not I can locate him?

Now, I am going to put on *rebuttal, Mrs. Hammond*." (Emphasis supplied)

Thereupon, there was a colloquy at the bench and in chambers out of the hearing of the jury apparently as to whether or not Mrs. Hammond could be recalled, since she had been present in the courtroom after the completion of her testimony in violation of the rule as to the exclusion of witnesses, which had been invoked at the trial.

Thereafter, the following appears in the transcript:

"THE COURT: Call your next witness.

MR. BURNETT: Your Honor, I have a little further *cross examination of the defendant.*" (Emphasis added)

Thereupon, Mr. Gantt resumed the witness stand and it was developed that he had been in jail since his arrest; that he thought he was arrested on Saturday night, February 27, 1972, and that he delivered the wine and cigarettes to Mr. Hammond the preceding morning (Friday, February 26, 1972). This examination also revealed previous felony convictions.

Witnesses Houston, Hammond and Achauer were then recalled to the stand by the state for *rebuttal.* Officer Houston testified that he arrested the defendant on Saturday, February 26, 1972 and that defendant has remained in custody since that time. Achauer testified that the check was cashed on Saturday, February 26, 1972 and that the police were contacted a short time later. Mrs. Hammond's testimony was, in substance, merely a reaffirmation of her earlier direct testimony that the signature on the check was not that of her husband and was therefore cumulative.

■ Thereafter, the defendant resumed the stand in his own behalf in "surrebuttal" and testified that the date Mr. Hammond wrote the check was Friday, February 25, 1972; that he cashed the check that same evening; that he delivered the purchases to Mr. Hammond the next morning, Saturday, February 26, 1972, and was placed under arrest that day. We take judicial notice of days of week and of calendar data. State v. Bubenyak, 331 Mo. 549, 56 S.W.2d 43, 44 (1932); City of Gladstone v. Knapp, 458 S.W.2d 885 (Mo.App. 1970). By reference to a 1972 calendar, we note that February 25, 1972 was a Friday and February 26, 1972 was a Saturday.

■ ■ The state had the burden of proof to establish the essential elements of the felony charged against the defendant under Section 561.011, subd. 1(3). In pertinent part, that statute reads:

"1. It shall be unlawful:

\*   \*   \*   \*   \*   \*

(3) For any person with intent to defraud to use as true, or to utter as true, \* \* \* any writing \* \* \* which said person knows has been made (forged) or altered in the manner described in either of subdivisions (1) or (2);"

In the case before us, the state could meet this burden by showing (1) that the defendant used or "uttered" the check in question; (2) that the check was false and not issued by the purported maker, Hammond; (3) that the defendant had knowledge of its falsity; and (4) defendant had intent to defraud. These elements could be established by the state by either direct or circumstantial evidence. In this case, the first element is not in dispute, the defendant did use and utter the check as above noted. The second element is in violent dispute. The defendant asserts that Hammond executed the check in his presence and the state offered substantial proof that it did not contain his signature. Proof of the third and fourth elements depends in large degree upon circumstantial evidence and legitimate inferences to be drawn from the evidence as to the elements of knowledge and intent on the part of the defendant.

■ It is unusual that direct evidence can be adduced as to the intent of a person to commit a crime. In most cases, such element of the offense must of necessity be established by circumstantial evidence.

State v. Hickman, 411 S.W.2d 195 (Mo. 1967); State v. Chevlin, 284 S.W.2d 563, 566 (Mo.1955); State v. Petrechko, 486 S. W.2d 217 (Mo.1972); State v. Mills, 495 S.W.2d 715, 716–717 (Mo.App.1973). In forgery cases the intent to defraud may be inferred or presumed if the act of forgery or uttering a forged writing is shown. 1 Wharton's *Criminal Evidence*, Section 134, p. 223; State v. Douglas, 312 Mo. 373, 278 S.W. 1016, 1022 (1926).

■ Also, it has been held that the possession of and an attempt to pass a forged instrument raises a presumption that the person in possession forged it and, unless its possession is explained to the satisfaction of the trier of the facts, such presumption becomes conclusive. State v. Williams, 152 Mo. 115, 53 S.W. 424, 426 (1899); State v. Pyscher, 179 Mo. 140, 77 S.W. 836, 841 (1903).

Some of the circumstances from which the jury could draw legitimate inferences of knowledge and intent are: the spelling of Hammond's given name; the defendant's confusion as to dates and days of the week; his statement upon arrest that he did not wish to involve others; and his failure to call upon the support of his friend Hammond to verify the check and the arrangements made with the defendant.

■ The defendant urges as error the fact that the court did not instruct the jury on the weight and effect of circumstantial evidence. This was a collateral issue and the court was under no duty to give such an instruction, unless a proper request was made. State v. Barnes, 442 S.W.2d 932, 934 (Mo.1969); State v. Spica, 389 S.W.2d 35, 52–53 (Mo.1965); State v. Stevens, 467 S.W.2d 10, 25 (Mo.1971).

After the court had settled the instructions which it intended to give, the following appears in the record:

"THE COURT: And the defendant offers no instructions.

MR. CONKLING: That is correct, Your Honor."

The cases cited by the defendant on this point do not support his position. The cases of State v. Burke, 462 S.W.2d 701 (Mo. 1971) and State v. Conway, 348 Mo. 580, 154 S.W.2d 128 (1941) involved the merits of instructions on circumstantial evidence which were *given* by the trial court. The case of State v. Regazzi, 379 S.W.2d 575 (Mo.1964) does not apply because in that case the error charged was that the trial court refused to give an instruction on circumstantial evidence which had been offered by the defendant.

The case of State v. Michael, 361 S.W. 2d 664 (Mo.1962) relied upon by defendant is in point but does not support defendant's position. In *Michael* the court ruled that a trial court was not to be convicted of error for failing to draft in its entirety an instruction on the collateral issue of circumstantial evidence pursuant to an oral request. The theory underlying *Michael* is of even greater force here because the record is barren of even an oral request by defendant for such an instruction.

The first point is ruled against the defendant.

■ The defendant's second point, that Instructions No. 3 and No. 5 incorrectly state the law of the case, cannot be sustained.

Instruction No. 3 reads in pertinent part as follows:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about February 26, 1972, in the City of Liberty, County of Clay, State of Missouri, the defendant *uttered as true* a check dated February 25, 1972 payable to the order of 'cash' in the sum of $20.00 signed Norvelle Hammond, and

Second, that the article had been so made that it purported to have *authorship that it did not possess*, and

Third, that the defendant *knew it had been so made*, then you will find the defendant guilty of forgery. (Emphasis supplied)

\* \* \* \* \* \*

Instruction No. 5 reads:

"The word 'uttering' *as used in Instruction No. 3* means an offering to another of a check with knowledge of the falsity of the writing and *with intent to defraud*." (Emphasis added)

Defendant argues that the main verdict directing instruction, No. 3, is erroneous because it does not hypothesize the essential elements of intent to defraud and knowledge of the fact that the check was not a valid check of Hammond. The latter element is a required finding of Instruction No. 3, in that it states—"that the defendant knew it had been so made"—i. e. not made by Hammond. The element of intent to defraud is covered in Instruction No. 5.

All instructions must be read and considered together and as such they constitute a single charge. State v. Crow, 486 S.W.2d 248, 254 (Mo.1972); State v. Prigett, 470 S.W.2d 459 (Mo.1971). A corollary of this firmly established rule is that referring the jury to another instruction for definitions is not error. State v. Brookshire, 368 S.W.2d 373 (Mo.1963); State v. Stevens, supra.

When these instructions are so considered, the element of intent is properly hypothesized since Instruction No. 5 specifically advises the jury that the word "uttering" as used in Instruction No. 3 means that the defendant offered the check with knowledge of the falsity of the writing "and with intent to defraud". But the defendant argues that this is not the dictionary or commercial or commonly accepted definition of the term "uttering". Other definitions are or could be accepted in other situations but, here, the reference is to a

specific context, namely, as the word was used in Instruction No. 3 and under Section 561.011, subd. 1(3) RSMo 1969, V.A.M.S. Within that context the definition was proper and the jury could not have been misled or misdirected by these instructions. Accordingly, the defendant's second point is ruled against him.

■ The third point raised by defendant, that the evidence was insufficient to support the verdict, is likewise without merit. In determining the sufficiency of the evidence, this court must accept all evidence, circumstantial or direct, tending to support the conviction together with all favorable inferences reasonably to be drawn therefrom. State v. Harris, 485 S.W.2d 612 (Mo.1972); State v. Petrechko, supra; State v. Sherrill, 496 S.W.2d 321, 323 (Mo.App.1973). It is not our function or prerogative to weigh the evidence or to judge the credibility of the witnesses. Those responsibilities lie solely within the province of the jury. Viewing this record in that light, it cannot be said that the evidence was insufficient to support the verdict.

■ ■ The fourth point urged by defendant is that it was "plain error" for the court to permit the state to recall the defendant "as a rebuttal witness in order to put into evidence his prior felony convictions." The record clearly shows that the defendant was not recalled to the witness stand in *rebuttal* but rather for further *cross-examination*. Having testified in his own defense, the state had the right to cross-examine him as to prior felony convictions on the issue of his credibility. Sections 491.050 and 546.260 RSMo 1969, V.A.M.S.; State v. Busby, 486 S.W.2d 501 (Mo.1972); State v. McKissic, 358 S.W.2d 1, 5 (Mo.1962).

■ The defendant made no objection to the recall of the defendant, nor to the questions propounded to him. Neither did he request any other affirmative action of the trial court, nor preserve the alleged er-

ror in his motion for a new trial. While the timing of this trial incident was unusual, matters of this nature rest largely within the sound discretion of the trial court. We do not find that the court abused such discretion or that any of the defendant's fundamental rights were so affected as to invoke the doctrine of "plain error" under Rule 27.20(c).

The fifth and final point raised by the defendant is that the court erred in permitting the state to call certain rebuttal witnesses who, the defendant asserts, offered only cumulative evidence. Here once again, the defendant made no objection at the time of the proffered testimony, asked for no affirmative action of the trial judge, did not preserve the alleged error in his motion for a new trial and asks our ruling upon the basis of "plain error". The testimony of witnesses Achauer and Officer Houston was clearly proper rebuttal to the testimony of defendant, that he cashed the check one evening, took the merchandise to Hammond the next morning, and was arrested that evening. While the testimony of Mrs. Hammond was cumulative (or more properly should be characterized as repetitious) she simply again stated that the signature on the check was not that of her deceased husband.

It has frequently been held that the scope of rebuttal testimony is within the discretion of the trial court, State v. Payne, 452 S.W.2d 805 (Mo.1970); State v. Huffer, 424 S.W.2d 776 (Mo.App.1968).

Unless this discretion is abused or the defendant's basic rights are adversely affected, this court will not reverse even though the testimony may fall short of strict rebuttal. State v. Williams, 442 S.W.2d 61, 65 (Mo. banc 1969).

The fifth point is ruled against the defendant.

The judgment is affirmed.

All concur.