STATE of Missouri, Plaintiff-Respondent,

v.

Lorenzo GILYARD, Defendant-Appellant.

No. KCD 26669.

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

Joel Pelofsky, Kansas City, for defendant-appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

DIXON, Judge.

By jury verdict, the defendant was convicted of forging, using and uttering a money order in violation of Section 561.011 RSMo 1969, V.A.M.S. He was sentenced to six years confinement in the Department of Corrections. The judgment of conviction is affirmed.

Defendant's motion for new trial and notice of appeal were timely filed. The defendant alleges three points of error in the trial court. First, he claims that the State's evidence was insufficient to identify beyond a reasonable doubt the defendant as the person who negotiated the money order.

Second, defendant claims that the submission under instruction No. 3 was erroneous because the evidence was insufficient to persuade the jury beyond a reasonable doubt that defendant knew the money order was forged. Third, the defendant claims the trial court erred in allowing the State to present evidence of defendant's prior convictions to the court in chambers after the State had rested its case. At the trial, the defendant did not present evidence.

On February 11, 1972, the defendant negotiated for cash a money order at the Bee Jay Food Mart. The money order was one of several blank money orders issued by Republic Money Orders, Inc., which had been stolen from a Safeway grocery store in Kansas City, Missouri, on October 16, 1970. Safeway, Inc., was the issuing agent of the Republic money orders. When the defendant cashed the money order, it was made payable in the amount of $70.30 to a "Hershell Duncan." The money order was signed by a purported maker, "Hubert Myars." No evidence was presented indicating who "Duncan" or "Myars" were or whether they exist at all. The owner of the Bee Jay Food Mart testified that he saw the defendant endorse the name "Hershell Duncan" on the money order. He testified that he then requested the defendant to write his address below the endorsement, which the defendant did. The owner said that he then asked the store security guard if he knew the defendant and that the guard replied, "Yes, he's alright." The owner then cashed the money order for the defendant. He said, "So I went on and cashed it, no doubt in my mind it wasn't a good check . . . good money order." The Columbia Union Bank refused to honor the money order when presented for deposit at that bank. The Bee Jay Food Mart has never received payment for the money order.

The defendant's first point on appeal is that the evidence was insufficient to establish "the defendant as the person negotiating the money order beyond a reasonable doubt." In determining the sufficiency of the identification evidence, all evidence and inferences in favor of the verdict will be taken as true. State v. Harris, 452 S.W.2d 577 (Mo.1970). The defendant argues that the failure to maintain a device for photographing called a regiscope and the statement by the store security guard that the individual who was cashing the money order was "alright" create doubt as to the identity of the defendant. The store security guard did not testify.

At the trial, the store owner unequivocally identified the defendant as the one who cashed the money order in question in his store and in his presence. The owner testified that he had seen the defendant in the store on two prior occasions. He said that on one prior occasion the defendant was with two younger women. He said that the three purchased some merchandise, then left the store. The owner identified the defendant at the preliminary hearing, several months after the incident, as the person who cashed the money order. The owner also picked the defendant's picture out of several shown to him by a detective soon after the alleged crime occurred. The store owner also described to the detective the approximate height, weight, age, and race of the individual who cashed the money order.

The store owner clearly remembered the circumstances surrounding the negotiation of the money order. He said that after the defendant had endorsed the instrument, he returned it to the defendant so he could write his address below his endorsement. He also testified that the defendant signed his endorsement with a pen hanging on the outside of the check cashing booth, and that he wrote his address with a loose pen which the owner gave to him for the purpose of writing his address below his endorsement.

Because the identification by the store owner was unequivocal, because his memo-

ry of the circumstances was clear, and drawing all the favorable inferences to the verdict, the evidence is sufficient to establish beyond a reasonable doubt that the defendant is the individual who negotiated the stolen money order.

■ The defendant's second point is essentially that the evidence as a whole is insufficient to support the verdict. Of course, all the evidence and inferences favorable to the verdict will be taken as true. State v. Harris, supra.

These facts are clear: (1) the money order was one of several stolen from a Safeway store in 1970, in Kansas City, Missouri; (2) the money orders were blank when stolen, that is, the lines indicating the maker, the date, and payee were not filled; (3) the money order was complete when negotiated by the defendant: it purported that the maker, "Hubert Myars," whose name was written in the blank designated "sender," had made the instrument payable to "Hershell Duncan" for $70.30 on February 9, 1972; (4) the defendant, Lorenzo Gilyard, endorsed the name "Hershell Duncan" on the back of the instrument; (5) the Bee Jay Food Mart gave the defendant $70.30 cash in exchange for the instrument; (6) the Columbia Union Bank refused to honor the instrument when the Bee Jay Food Mart presented it for deposit.

The verdict directing instruction was instruction No. 3:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 11th day of February, 1972, in the county of Jackson, State of Missouri, the defendant used as true a certain writing, to-wit: a money order drawn on the Republic Bank of Dallas in the sum of Seventy dollars and thirty cents ($70.30) payable to Hershell Duncan, and

Second, that the document was of a kind commonly relied upon in business or commercial transactions, and

Third, that it had been so made that it purported to have been made by authority of one that did not have such authority, and

Fourth, that the defendant knew that it had been so made, then you will find the defendant guilty of forgery.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense."

Clearly, the defendant used the money order as if it were true when he negotiated it and equally clear is the fact that the document was of a kind commonly relied on in business transactions.

■ The nub of defendant's contention is that the evidence fails to prove that the instrument purported to have been made by authority of one that did not have such authority. Defendant asserts that "Safeway is the maker and clearly had authority." The argument fails in its premise. Safeway is not the "maker" of the money order. Curiously, the issue has not been raised in Missouri but well reasoned authority supports the proposition that the maker of a money order is the one who purchases the instrument; only he has the authority to sign the money order in the blank on the money order designated "sender." Garden Check Cashing Service, Inc. v. First National City Bank, 18 N.Y.2d 941, 277 N.Y.S.2d 141, 223 N.E.2d 566 (1966). State v. LaRue, 5 Wash.App. 299, 487 P.2d 255 (1971). A plethora of Federal authority holds that any completion of a blank stolen money order thereby lending authenticity to it constitutes a false making. Castle v. United States, 287 F.2d 657 (5 Cir. 1961); United States v. Di Pietto, 396 F.2d 283 (7 Cir. 1968). In United States v. Smith, 426 F.2d 275, 276 (6 Cir. 1970), the court held:

"Accordingly, the important inquiry in the present case is whether the completion of the blank money orders constitut-

ed a false representation or a false execution. We hold that it constituted a false execution. The money orders were not, at the time of the thefts, evidence of an obligation on the part of the issuing company. It was necessary to insert the agent's symbol, an amount, a sender's name, and the name of the payee in order to create an obligation. This distinguishes *Gilbert* [Gilbert v. United States, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750] where the refund checks were genuine written evidence of obligations and required only an endorsement to be cashed. Here, the insertion of the necessary information on the blank money orders constituted a false making within the meaning of the statute."

See also United States v. Halfen, 467 F.2d 127 (5 Cir. 1972).

Necessary to the holding of these cases is the determination that the one with authority to "make the instrument" is the lawful holder or his agent. The instant money order purports to have been made by the authority of "Hubert Myars," but neither "Myars" nor anyone had the authority to make the stolen instrument by signing it.

■ It was also necessary as defendant contends for the State to prove that the defendant had knowledge that the money order as completed was false at the time that he negotiated the money order. In McGee v. United States, 402 F.2d 434 (10 Cir. 1968), several blank American Express money orders were stolen from a Parkview Drug Store in Kansas City, Missouri. The defendant in that case negotiated three of the stolen money orders to various Kansas City businesses. As in the instant case, that defendant endorsed the money orders with a name other than his own. In determining that the defendant had knowledge that the instruments were falsely made, the court said, l.c. 438, "once the government established that the defendant falsely endorsed the bogus securities, it was entirely

reasonable for the jury to infer guilty knowledge. There being no evidence to the contrary, it therefore remained reasonable for the jury to conclude as it did." When the facts show that a defendant used as true an instrument which is falsely made, as is the case here, "an inference arises that the person who uttered the check as genuine either forged the instrument, or knew it to be forged, unless the uttering or forgery is explained satisfactorily." State v. Massey, 492 S.W.2d 48 (Mo.App.1973); State v. Gantt, 504 S.W.2d 295 (Mo.App.1973); United States v. Bradford, 423 F.2d 681 (6 Cir. 1970); United States v. Tasher, 453 F.2d 244 (10 Cir. 1972); United States v. Greene, 442 F.2d 1285 (10 Cir. 1971).

■ The defendant also contends in the argument portion of his brief that instruction No. 3 is erroneous because it "fails to require the jury to find that the uttering was made with intent to defraud." The motion for a new trial did not raise this issue. Even if the point were properly preserved, the instruction is MAI CR 10.14 and such a claim of error is not cognizable here. State v. Yeokum, 516 S.W.2d 535 (Mo.App. 1974). The defendant's reference to the plain error rule cannot avail to broaden the power to review the instruction promulgated by the Supreme Court.

■ Defendant claims that the trial court erred in permitting the State to present evidence of defendant's prior convictions to the court in chambers after the State had rested its case. The evidence of prior convictions shall be presented to the court outside the hearing of the jury and prior to the submission of the case to the jury. Section 556.280(2), RSMo 1969, V.A. M.S. In effect, the court granted leave to reopen; that power is discretionary. No prejudice to the defendant appears from that discretionary ruling.

Judgment affirmed.

All concur.