**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**John Larue JOHNSON,**
**Defendant-Appellant.**

**No. KCD 29190.**

Missouri Court of Appeals,
Kansas City District.

Feb. 27, 1978.

J. Arnot Hill, Hill & Gamm, Kansas City, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

DIXON, Judge.

Defendant appeals a sentence of seven years for the offense of using and uttering a forged instrument. The sentence was by the court, the Second Offender Act having been found applicable.

Defendant asserts error in the failure of the trial court to direct a verdict of acquittal, asserting the evidence was insufficient to sustain the charge laid in the information.

A teller was at the drive-in window of the Raytown Bank when a man pulled in and asked her for a withdrawal slip. She sent a blank withdrawal slip out to the man through a pneumatic tube, asking if he needed a pen. The man said he had a pen, filled out the slip, and then sent it back in with a passbook. She became suspicious because the name on the passbook and the name on the withdrawal slip, Bill Newby, was that of a white man she knew and the man who handed her the passbook and slip was black. She took the documents to the bank manager, who told her to check the signature cards to see if there was more than one Bill Newby who had an account at the bank. The search revealed that there was only one person with this name who had an account at the bank. She identified the man who had attempted to make the withdrawal as the defendant.

Although the withdrawal slips had no words indicating where the signature should appear, most people signed it on the line at the bottom of the paper. The defendant had signed in the middle of the slip. However, even though the signature did not appear in the usual place, the bank would still honor the withdrawal slip and, on past occasions, had honored slips signed in the wrong place.

An officer of the bank then testified in corroboration of the teller. This witness unequivocally testified as to the nature of the "withdrawal slip." He characterized it as the teller's authority to withdraw funds from the passbook of the depositor. He, likewise, stated that the teller would then treat the withdrawal slip as a cash item to balance the teller's window for the day. The officer also stated that the signature on the withdrawal slip was compared with the signature card for Bill Newby and that the main file was checked to see if any other "Newby" account existed. He also called the police who came and questioned a man he identified as the defendant. The defendant told the police that he had done some work for Newby and that Newby had authorized him to use the passbook to pay for that labor.

The police officer who had arrested the defendant at the bank also testified to the defendant's statement as to the possession of the passbook.

The owner of the passbook identified the passbook for the savings' account (State's Exhibit # 2) as his and stated that the signature on the withdrawal slip was not his. He did not know Johnson, and he had never authorized Johnson to make withdrawals from the passbook.

The defendant concedes that the information and the instruction set forth the elements of using and uttering a forged instrument. In the context of this case, the four elements are: (1) defendant offered as true a withdrawal slip of the Raytown Bank; (2) that the document was of a kind commonly relied upon in business or commercial transactions; (3) that it was so made that it purported to have been made by another; (4) that the defendant knew it had been so made.

On the evidence adduced, the defendant argues the evidence is insufficient to sustain the conviction on each of the four elements. The defendant's argument as to the four elements is as follows:

"As to the first element of the forgery crime charged all the defendant offered as true was an incomplete, unsigned withdrawal slip of the Raytown Bank.

As to the second element of the forgery crime charged the document offered was not of a kind commonly relied upon in business or commercial transactions.

As to the third element of the forgery crime charged the document had not been so made that it purported to have been made by another.

As to the fourth element of the forgery crime charged the defendant knew that he had written the name of a Savings Account Owner, the number of the account and the arabic number $457 but that he had neither dated nor signed said document."

As to elements one and four, the entire argument is set forth above.

The court must consider these arguments in the light of the evidence most favorable to the verdict, indulging the favorable inferences from the evidence, as well as disregarding all evidence and inferences contrary to the verdict. *State v. Franco*, 544 S.W.2d 533 (Mo. banc 1976); *State v. Oldham*, 546 S.W.2d 766 (Mo.App. 1977); *State v. Gilyard*, 523 S.W.2d 564 (Mo.App.1975).

So considered, the defendant's argument on the first element palpably ignores the evidence that the withdrawal slip would have been honored if the teller had not been suspicious. It was in the eyes of the bank not unsigned nor incomplete. The effort of the bank's employees to find another Bill Newby account and to compare the signature show they viewed it as possibly true and complete enough to require payment.

So also, the argument as to the third element simply ignores the evidence that the defendant made and tendered the slip with the name of another and the inference that the defendant intended for the teller to believe it was made by Bill Newby. The attempt by the defendant to expand this argument by saying defendant did not represent himself as Newby is also fallacious. Defendant attempts to "bootstrap" himself by saying that if the teller had asked if he was Newby the defendant would not have

so claimed, pointing to his false explanation following the event. The offense was complete when the slip was passed to the teller. The inference favorable to the verdict is that the defendant intended for the teller to believe that he was Newby and deliver the funds.

That the defendant knew the instrument was so made is indisputable. An inference of knowledge arises from use of a forged instrument. *State v. Gilyard*, 523 S.W.2d 564 (Mo.App.1975).

As to the second element, the defendant continues the argument by asserting that the undated, unsigned receipt is not a commercially relied upon instrument. Except for the lack of a date, the other portion of the argument made is simply the defendant's more favorable view of the evidence. But here, the inferences favorable to the verdict must be accepted.

The bank would have honored the instrument signed in the wrong place. It does have an account number, and the amount is specified, albeit inexpertly. But for the vigilance of the teller and her acquaintance with Bill Newby, the amount requested might have been paid. The defendant's argument that the slip is a mere "receipt" ignores the testimony as to the bank's practices which demonstrate that such withdrawal slips are relied upon as authority for withdrawals and as cash items. What is a document commonly relied upon in business transactions is a fact issue and, upon this evidence, could be found to be such a document. A narrow view of the statute as relating only to negotiable instruments was rejected in *State v. Glenn*, 431 S.W.2d 200 (Mo.1968). The statute is intended to cover the use of any writing which is, under the evidence, within the definition.

Conviction affirmed.

All concur.