STATE of Missouri, Respondent,

v.

William Alonzo WASHINGTON, Appellant.

No. KCD 29855.

Missouri Court of Appeals, Kansas City District.

Aug. 28, 1978.

Jeffrey O. Parshall, Knight & Ford, Columbia, for appellant.

John D. Ashcroft, Atty. Gen., Stanley H. Robinson, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

SOMERVILLE, Judge.

Defendant was charged with the crime of uttering a forged instrument with intent to defraud (Sec. 561.011, RSMo 1969), tried and convicted by a jury, and sentenced by the court (per the second offender act) to four years imprisonment.

The facts surrounding the offense are straightforward and uncomplicated. On August 20, 1976, defendant approached the "courtesy booth" in Nowell's Supermarket, Columbia, Missouri, and sought to cash a check purportedly drawn by Wendolyn R. Dixon and made payable to Keith Mathews. The store manager was manning the "courtesy booth" at the time and he asked defendant if he was Keith Mathews' and defendant replied that he was. As a matter

of fact, defendant presented Keith Mathews' driver's license (which turned out to have been stolen) to the store manager for identification purposes. The parodical nature of defendant's misrepresentations is revealed by the store manager's testimony that he knew the true Keith Matthews as he had previously been employed at Nowell's Supermarket. Suffice it to say, the store manager refused to cash the check.[1] The store manager than made an excuse to take the check to his private office. When he reached his private office he called the police but by the time they arrived defendant had left the premises. The store manager retained the check and driver's license which defendant had presented. Another store employee, who also knew the true Keith Mathews, was present in the "courtesy booth" when the previously mentioned events occurred. His testimony, so far as it went, accorded with that of the store manager. The store manager and the employee positively identified defendant on several occasions, the last time being during the course of the trial. Wendolyn R. Dixon and the true Keith Mathews both testified that their respective signatures did not appear on the check which defendant presented and sought cash for.

Five points of error are presented by defendant: (1) error in denying his oral motion for a continuance predicated on the state's failure to comply with his request for discovery; (2) error in denying his request to dismiss counsel and obtain other counsel; (3) error in overruling his motion for judgment of acquittal at the close of the state's evidence because of its insufficiency to sustain a conviction for the charged offense; (4) error in giving Instruction No. 4 [MAI–CR 10.14(a)] because it failed to submit all the elements of the charged offense; and (5) error in refusing to grant him a new trial on the ground that the verdict was against the weight of the evidence.

Defendant's first point is argumentatively pitched upon the state's failure to *formally* respond to his request for discovery under Rule 25.32. Notwithstanding defendant's admission that the state opened its file and made it available to his counsel prior to trial, he nevertheless complains that the state's failure to *formally* respond to his Rule 25.32 request worked to his prejudice. Defendant's argument runs the following course: the granting of a continuance is one of the sanctions prescribed in Rule 25.45 when an opposing party fails to comply with a request for discovery; the state literally failed to comply with defendant's request for discovery by not formally responding to it, thereby entitling defendant to a continuance; and the court's refusal to grant him a continuance was prejudicial. Defendant has failed to point out, and this court has been unable to ascertain, just how or in what respect or respects defendant claims he was prejudiced. For this reason, defendant's first point, and the argument tendered in its support, is mainly an exercise in academicism. A strong case can be made that the state's manner of making disclosure substantially complied with Rule 25.36(B), to-wit: "Unless otherwise ordered by the court, disclosure under Rules 25.32 through 25.35 shall be: . . . (B) By the party making disclosure notifying opposing counsel that the material and information to be disclosed may be inspected, obtained, tested, copied or photographed at a specified time and place and whether suitable facilities are available." This view would insulate the state from imposition of any of the sanctions provided for in Rule 25.45, and, more particularly, would negate the ground which defendant relied upon for a continuance.

Even if it be assumed, arguendo, that the state's cavalier attitude towards disclosure stultified Rule 25.36(B), supra, cogent reasons nevertheless exist for refusing to brand the trial court with error for having denied defendant's request for a continu-

---

1. Although a person to whom an instrument is offered does not accept it, this does not vitiate a charge of uttering. To utter as used in a statute proscribing forgery and counterfeiting means to offer, whether accepted or not, a forged instrument with the representation by words or actions, that the same is genuine. *State v. Horner*, 48 Mo. 520 (1871).

ance. The imposition of a particular sanction provided for in Rule 25.45 lies within the discretion of the trial court, and whether or not it abuses its discretion in not imposing a particular sanction when the state fails to comply with a request for discovery must be tested in terms of resultant prejudice and fundamental unfairness to the accused. *State v. Moten*, 542 S.W.2d 317 (Mo.App.1976). Whether prejudice or fundamental unfairness results in a given case depends upon the nature of the charge, the evidence presented by the state and the likely role any undisclosed matters occasioned by noncompliance with discovery would have played in the outcome of the trial. In this vein, if the undisclosed matters are not of such a character as to raise a reasonable likelihood that they would have affected the outcome of the trial, if known prior thereto, a trial court may not be said to have abused its discretion in refusing to impose one of the sanctions prescribed by Rule 25.45, supra, even though the state failed to comply with an accused's request for discovery. *State v. Dayton*, 535 S.W.2d 469 (Mo.App.1976), *rev'd on other grounds*. In the instant case defendant makes no claim or pretense that any items or matters within the purview of his request for discovery were secreted or removed by the state from its file before it was informally opened for defense counsel's perusal. Nor does he specify or make reference to any particular item or matter purportedly possessed by the state which, if known to him, would have somehow aided him or which would have affected the outcome of the trial. Under these circumstances it cannot be said that the trial court abused its discretion in refusing to grant defendant's request for a continuance. Although the state's informal approach in complying with defendant's request for discovery is not to be condoned, the manner in which it did so does not warrant a reversal of defendant's conviction, particularly so as defendant has failed to point out or demonstrate any resultant prejudice and the state's manner of making disclosure was more a technical than a substantive violation of Rule 25.36, supra.

Defendant's second point takes issue with the trial court's refusal to permit him to dismiss counsel and obtain other counsel. Factually, this point must be put in proper perspective. Counsel was appointed for defendant on April 6, 1977, by the Magistrate Court of Boone County, Missouri. Defendant's dual request to dismiss appointed counsel and to obtain new counsel was first broached on the morning of July 7, 1977, immediately before the trial began. Defendant gave no reason to the trial court as to why he wanted to change counsel, and he has likewise failed to advance any reason in this court for wanting to do so. Nor has he at any stage of the proceedings charged counsel with any dereliction, lack of preparation, want of professional commitment, lack of communication, or ineffectiveness of any kind. The case of *State v. Lee*, 521 S.W.2d 180 (Mo.App.1975) controls defendant's second point. In *Lee*, the accused, on the morning of the day his trial was to begin, requested that his appointed counsel be permitted to withdraw and that he be granted a continuance to obtain private counsel. The similarity of *Lee* to the facts and obtaining issue in the instant case is so striking that liberty is taken to quote from it at some length: "Both of these requests came immediately before the trial began. Both of the points presented are purely discretionary matter for the court and we find no abuse of discretion. First, because an accused in a criminal proceedings has no absolute right to be represented by counsel of his own choosing, *State v. Jefferies*, 504 S.W.2d 6 (Mo. 1974). Secondly, here defendant had from October 3, 1973, when an attorney from the Public Defender's Office was first designated to handle his case, until the time of trial, December 13, 1973, to obtain different counsel. Clearly, it is not an abuse of discretion to deny a last minute request for a continuance to find new counsel. The trial court must consider the interest of the public in effective and efficient administration of justice particularly when it appears that the accused will not be denied skilled and effective representation. *State v. Jefferies*,

supra. * * * The same reasoning prevails in assessing the propriety of the trial court's refusal to permit appointed counsel to withdraw. The matter of the withdrawal of counsel is normally within the discretion of the trial court. *State v. Wilkinson,* 423 S.W.2d 693 (Mo.1968). By the standards of *State v. Jefferies,* supra, the trial court has not abused its discretion in this case."

▮▮▮ Defendant's third point is directed towards the alleged inadequacy or insufficiency of the evidence at the close of the state's case to support or sustain the charge of uttering a forged instrument with intent to defraud. As defendant correctly points out, it was incumbent upon the state to prove (1) that defendant used or "uttered" the check in question, (2) that the check was false and not issued by the purported maker, (3) that defendant had knowledge of its falsity, and (4) that defendant had the intent to defraud. *State v. Gantt,* 504 S.W.2d 295, 299 (Mo.App.1973). The defendant tacitly concedes that the record forcibly demonstrates an abundance of evidence to sustain the state's burden with respect to the first two requirements. The combined testimony of the manager of the supermarket and his co-employee fulfilled the state's burden with respect to proof that defendant uttered the check in question, and the testimony of the true Keith Mathews and that of Wendolyn R. Dixon, the purported payee and maker, respectively, of the check in question, fulfilled the state's burden with respect to proof that the check was false and not issued by the purported maker. Therefore, as a matter of practical necessity, defendant was forced to tightly circumscribe his argument and his own contentions now are that there was no evidence that he had knowledge of the check's falsity or that he had an intent to defraud. Even on the limited basis argued, defendant's third point is without merit. To a large degree, proof of one's knowledge of an instrument's falsity and of one's intent to defraud depend upon circumstantial evidence and legitimate inferences to be drawn from the evidence. The "possession of and an attempt to pass a forged instrument raises a presumption that the person in possession forged it and, unless its possession is explained to the satisfaction of the trier of the facts, such presumption becomes conclusive." *State v. Gantt,* supra, p. 300; *State v. Pyscher,* 179 Mo. 140, 77 S.W. 836 (1903); and *State v. Williams,* 152 Mo. 115, 53 S.W. 424 (1899). Since defendant's possession of and attempt to pass the forged check in question went unexplained (defendant offered no evidence whatsoever), the state's case benefited by the conclusive presumption which arose that defendant had forged the check in question. Since defendant was conclusively presumed to have forged the check in question, it would debase simple logic to say that defendant had no knowledge of the check's falsity. As to proof of defendant's intent to defraud, it could be inferred from his act of uttering the forged check. *State v. Gantt,* supra, p. 300; *State v. Douglas,* 312 Mo. 373, 278 S.W. 1016 (1926); and Wharton's Criminal Evidence, 13th Edition, Vol. 1, § 134, p. 223. After careful consideration, defendant's third point is found to be without merit.

▮▮▮ Defendant's fourth point challenges Instruction No. 4, the state's verdict-director. This instruction, which defendant so spiritedly attacks, was a faithful adaptation of MAI–CR 10.14(a) to comport with the facts of this case, and its use was mandated by Rule 20.02. Defendant argues that two of the requisite elements of uttering a forged instrument, an intent to defraud and knowledge of the check's falsity, *State v. Gantt,* supra, p. 299, are not submitted by Instruction No. 4. It should first be noted that defendant has lost sight of the fact that this court is powerless to declare erroneous a pattern criminal instruction contained in MAI–CR. *State v. Burton,* 544 S.W.2d 60 (Mo.App.1976); *State v. Gilyard,* 523 S.W.2d 564 (Mo.App. 1975); and *State v. Yeokum,* 516 S.W.2d 535 (Mo.App.1974). Even if this court had the power to do so it would not avail defendant in this case. The third and fourth paragraphs of Instruction No. 4, as given in the instant case, read as follows: "Third, that it has been so made that it purported to have been made by another, and Fourth,

that the defendant knew that it has been so made, . . .". These paragraphs adequately advised the jury that, among other required findings, they had to find that defendant had knowledge of the check's falsity in order to find him guilty of the charged offense. This court recently held in *State v. Bland,* 565 S.W.2d 735 (Mo.App. 1978), that MAI–CR 10.14(a), which Instruction No. 4 correctly adopted and faithfully followed, clearly informs a jury of the necessity of finding that an accused had an intent to defraud.

Defendant's fifth and final point seeks to invoke relief on a basis upon which this court is powerless to respond—to grant a new trial to defendant on the ground that the guilty verdict returned by the jury was against the weight of the evidence. It was the prerogative of the jury, and it alone, to weigh the evidence in this case. Appellate review is restricted to determining whether a guilty verdict returned by a jury is supported by substantial evidence. *State v. Lamaster,* 534 S.W.2d 574 (Mo.App.1976); and *State v. Kramer,* 534 S.W.2d 281 (Mo.App.1976). From what has previously been said, there was substantial evidence to support the guilty verdict returned by the jury in this case.

Judgment affirmed.

All concur.