**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Leonard Albert WADE,**
**Defendant-Appellant.**

**No. 48891.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 27, 1985.

E. Darrell Davis, St. Charles, for defendant-appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Leonard Albert Wade was convicted by a jury of the Class C felony of forgery in violation of § 570.090.1(4) RSMo 1978 in the Circuit Court of St. Charles County and was sentenced to a term of two years imprisonment in the custody of the Missouri Department of Corrections.

On appeal the appellant contends that the trial court erred in failing to sustain his motions for judgment of acquittal at the close of the state's case and at the close of all of the evidence because the state's evi-

dence was insufficient to sustain the conviction of forgery.

We affirm.

The state's evidence was that the appellant went to the First National Bank of St. Charles in St. Charles County, Missouri, on August 22, 1983, with a seven hundred dollar ($700.00) check purportedly drawn by Lawrence Vogt on his personal account at First National and payable to appellant. He placed one hundred dollars ($100.00) in his own savings account at First National and took the other six hundred dollars ($600.00) in cash. The check had been taken from the glove compartment of Vogt's automobile after the car was stolen the late evening of August 21, 1983, or early morning of August 22, 1983, by a juvenile, J.S., and B.H., a friend of J.S. The vehicle was abandoned by the thieves on Melody Lane in the Missouri Mobile Home Park in St. Charles County a short time after it had been stolen when it had been driven into a ditch directly across the street from appellant's home. J.S. and B.H. testified at the trial that they had not taken any checks from the stolen vehicle.

Mr. Vogt testified that he did not make out the check and that he did not know the appellant and had never met him.

Appellant explained his possession of the check by stating that it was given to him as a down payment on his four wheel drive truck. He told this to the detectives after he was taken into custody and testified to the same effect at trial.

At trial appellant testified that during the early morning hours of August 22, 1983, he was awakened by his wife, Deborah Ann Wade, and saw a 1966 or 1967 model Ford automobile in the vicinity of a trailerhome occupied by Bob and Cindy Chouris across the street from where they live on Melody Lane in St. Charles, Missouri. Appellant and his wife went to the Chouris' trailer to inform them of the presence of the Ford automobile, the front wheels of which were stuck in the cesspool for the Chouris' trailer. After visiting with the Chourises for a time the Wades returned to their trailer home, and appellant commenced working on his truck, repairing a short in the tail-lights. The truck had been involved in an accident and needed a new front axle. After appellant had been working on the truck for about fifteen minutes he was approached by a man who claimed he owned the car stuck across the street and inquired whether he could use appellant's truck to pull the car out of the Chouris' yard. Appellant refused and the man offered to buy the truck for twenty one hundred dollars ($2,100.00), a third down and the balance to be paid when appellant had finished fixing the truck. The man then wrote him a check for seven hundred dollars ($700.00), gave it to him, and walked away saying he would be back and pay the balance when appellant finished repairing the truck. The reason for the seven hundred dollar ($700.00) down payment was so appellant could purchase a new front axle to install on the truck. The man never returned for the truck.

Appellant was unable to identify either J.S. or B.H. as the man who wrote the check. He admitted cashing the check at the bank and receiving six hundred dollars ($600.00) in cash and depositing one hundred dollars ($100.00) in his joint savings account.

The statute under which appellant was convicted, § 570.090.1(4) RSMo 1978, provides that a person commits the crime of forgery if, with the intention to defraud, he uses as genuine, or possesses for the purpose of using as genuine, or transfers with the knowledge or belief that it will be used as genuine, any writing or thing which the actor knows has been made or altered in the manner described in § 570.090.1 RSMo 1978.

In reviewing contentions of insufficiency of evidence to support a jury verdict, we must accept as true all evidence favorable to the state, including all favorable inferences drawn from the evidence and disregard all evidence and inferences drawn from the evidence and disregard all evidence and inferences to the contrary. *State v. Bailey*, 659 S.W.2d 559, 560[1]

(Mo.App.1983); *State v. McIntosh,* 655 S.W.2d 83, 84[1] (Mo.App.1983).

 Clearly, the evidence in this case is circumstantial, but the mere fact that the state's case was based on circumstantial evidence does not mean that the state's case was insufficient. In order for a case based on circumstantial evidence to be legally sufficient,

> the facts and circumstances relied upon to establish guilt must be consistent with each other ... and exclude every reasonable hypothesis of defendant's innocence, but need not be absolutely conclusive of guilt, or demonstrate impossibility of innocence. The mere existence of other possible hypotheses is not enough to remove the case from the jury.

*State v. Williams,* 652 S.W.2d 226, 227[3, 4] (Mo.App.1983) *citing, State v. Means,* 628 S.W.2d 426, 428[1] (Mo.App.1982).

 We find that the circumstantial evidence in this case is sufficient to sustain appellant's conviction.

 The state's evidence clearly established that Lawrence Vogt had not signed the seven hundred dollar ($700.00) check and that the check had been used by the appellant to obtain money from Vogt's checking account. As the Western District of this Court said in *State v. Gilyard,* 523 S.W.2d 564, 568 (Mo.App.1975):

> When the facts show that a defendant used as true an instrument which is falsely made, as is the case here, 'an inference arises that the person who uttered the check as genuine either forged the instrument, or knew it to be forged, unless the uttering or forging is explained satisfactorily.'

See also *State v. Massey,* 492 S.W.2d 48, 51–52[2] (Mo.App.1973).

Unless the inference is rebutted once the state establishes that the defendant uttered a forged check as genuine, no further proof that the defendant knew of the forgery or intended to defraud is necessary. These elements are taken as established. *State v. Sanford,* 605 S.W.2d 219, 221[3] (Mo.App. 1980), *citing, State v. Gantt,* 504 S.W.2d

295, 300[6] (Mo.App.1973). In order to rebut the inference, the defendant must explain his possession of the instrument to the satisfaction of the trier of the fact. *Gantt,* id. Here, the jury weighed the evidence and determined that the appellant's explanation was not satisfactory. It is not our function to re-weigh the evidence or re-examine the credibility of the witnesses. Those tasks are for the trier of the facts. *State v. Bailey,* supra, p. 560[2]. We must defer to the jury's decision.

The conviction is affirmed.

STEPHAN, C.J., and SIMON, P.J., concur.