STATE of Missouri, Respondent,

v.

**William L. NELSON, Appellant.**

**William L. NELSON, Appellant,**

v.

STATE of Missouri, Respondent.

Nos. 62438, 64990.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 21, 1995.

**291**

Susan Gentle, Bruce Antrim, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Defendant appeals after a jury convicted him of three counts of forgery in violation of § 570.090.1(4), RSMo 1986, for which he was sentenced as a persistent offender to concurrent ten-year sentences on each count. Also consolidated within this action, Defendant appeals the denial of his Rule 29.15 motion. We affirm.

The facts viewed in the light most favorable to the verdict reveal Defendant went to a pharmacy and filled a fraudulent prescription for Didrex written on a counterfeit prescription pad to a fictitious person at a fictitious address. Didrex, a Schedule III controlled substance, is an amphetamine also known as "speed." Defendant initially gave the fraudulent prescription to a pharmacy technician, Sandra Kremer. When the prescription was filled, Kremer handed the bag to Defendant.

Ten days later, Defendant returned to the same pharmacy and attempted to fill a similar prescription written to another fictitious person. The pharmacist became suspicious

because he remembered Defendant had just ten days earlier received a thirty-day supply of Didrex. Also, after the last time he filled Defendant's prescription for Didrex, another pharmacist called the physician noted on the prescription. The physician stated he did not prescribe the Didrex, never prescribed it in the amount listed, and had recently stopped prescribing it altogether. Furthermore, the physician stated the prescription paper was counterfeit because the ink color was wrong. To stall Defendant so he could call the police, the pharmacist told him there would be a short wait to fill the prescription. After being told this, Defendant left without picking up the medication.

Several weeks later, Defendant went to a different pharmacy and attempted to fill another counterfeit prescription for Didrex written to a third fictitious person. This time the prescription had no address on it. When asked by the pharmacy student on duty at the counter, Karl Ferry, Defendant supplied a fictitious address. Ferry recognized Defendant from previous occasions when he attempted to fill other prescriptions for Didrex.

Coincidentally, an investigator for the Missouri Department of Health, Bureau of Narcotics and Dangerous Drugs, Gary McDonald, was in the pharmacy that day. McDonald was also suspicious because the dosage on the prescription was questionable. Furthermore, the prescription was written extremely clearly and legibly, which would eliminate the need to call the physician for any verification. McDonald attempted to telephone the physician whose signature was depicted on the fraudulent prescription but noticed Defendant had left the pharmacy. When McDonald was looking for Defendant on the parking lot, he saw someone fitting Defendant's description drive past him. McDonald wrote down the license plate number from which the police were able to obtain Defendant's photo.

Both Kremer and Ferry positively identified Defendant's picture as the person who attempted to fill the fraudulent prescriptions. Before trial, Defendant filed a Motion to Suppress Identification to exclude evidence of the photo identification based on alleged suggestiveness of the police. The trial court overruled this motion.

Defendant's first point on appeal alleges trial court error when the court denied his Motion for Judgment of Acquittal at the close of the State's evidence because "the State's circumstantial evidence as to the element of the mental state failed to exclude any reasonable theory of innocence." We review the sufficiency of the evidence by viewing the evidence in the light most favorable to the State, and we give the State the benefit of all reasonable inferences disregarding unfavorable evidence and inferences. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). We must determine whether sufficient evidence supports the verdict, meaning evidence from which reasonable persons could have decided Defendant was guilty. *State v. Murphy*, 753 S.W.2d 90, 91 (Mo.App.1988). In so doing, we accept as true all evidence supportive of the verdict. *Id.* Circumstantial evidence is perfectly valid and can be essential in a forgery case where a defendant's knowledge can likely be established no other way. *State v. Wade*, 696 S.W.2d 860, 862 (Mo.App.1985); *State v. Washington*, 570 S.W.2d 838, 843 (Mo.App.1978).

Defendant was convicted of forgery in violation of § 570.090.1(4), RSMo 1986. This statute provides that a person commits the Class C felony of forgery if, with the purpose to defraud, he or she uses as genuine, or possesses for the purpose of using as genuine, or transfers with the knowledge or belief that it will be used as genuine, any writing or other thing which he or she knows has been made or altered in the manner described within § 570.090.1, RSMo 1986. *Wade*, 696 S.W.2d at 861.

The physician whose signature appeared on the prescriptions did not sign them and, in fact, no longer prescribed Didrex. Neither Defendant nor any of the people listed on the prescriptions were patients of the physician, and none of the people live at the addresses written on the prescriptions. Two of the three addresses do not even exist. The paper prescription slips were forged as well, because the physician testified his slips were

printed with a different ink color. Defendant presented forged prescriptions three separate times. If Defendant seemingly became suspicious because it took too long to fill them, he would leave and not return. Furthermore, on one occasion the forged prescription slip did not have an address written on it. When asked by a pharmacy employee, Defendant provided a false address.

The facts established Defendant knowingly used as true a falsely made instrument. "The 'possession of and an attempt to pass a forged instrument raises a presumption that the person in possession forged it and, unless its possession is explained to the satisfaction of the trier of the facts, such presumption becomes conclusive.'" *Washington*, 570 S.W.2d at 843, citing *State v. Gantt*, 504 S.W.2d 295, 300 (Mo.App.1973). Whether the proof of possession raises a presumption or supports an inference makes no difference. There was no evidence at trial explaining Defendant's use and possession of the forged prescriptions. As a result, his intent to defraud and knowledge of the forgery were taken as established. *Id.* Point denied.

■ As his second point on appeal, Defendant argues the trial court erred when it denied his Motion to Suppress Identification because the out-of-court identifications were impermissibly suggestive and, therefore, tainted the in-court identifications. Defendant claims the police officers suggested to the witnesses that the suspect's picture was among the photographs within the photo array.

■ Defendant must first show that due to impermissible suggestiveness of the identification procedure, there arose a "very substantial likelihood of irreparable misidentification." *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989), *cert. denied*, 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989). Defendant must then establish the impermissibly suggestive identification procedure made the identification unreliable. *Id.; State v. Vinson*, 800 S.W.2d 444, 446 (Mo. banc 1990). We find neither impermissible suggestiveness nor unreliability.

The facts favorable to the verdict establish the officers involved prepared photo arrays composed of men who resembled Defendant. The officers did not tell the witnesses the man who passed the forged prescriptions was among the photos. They asked the witnesses to identify anyone among the photos who they recognized as the suspect. The witnesses saw the Defendant several times when he attempted to pass the forged prescriptions and noticed distinguishing features about him. All witnesses positively identified Defendant both in the photographs and in court. Furthermore, the State also presented the testimony of another witness who did not look at any photo arrays but nonetheless also identified Defendant. Point denied.

■ Defendant's third point on appeal argues the trial court erred in denying Defendant's *Batson*[1] challenge to three of the State's peremptory strikes. To adequately challenge a peremptory strike made by the State and make a prima facie case of discrimination, a defendant must show that he or she is a member of a cognizable racial group, the State has used a peremptory strike to remove members of the jury panel who are of defendant's race, and an inference has been raised that the State used the peremptory strike to remove the person on account of his or her race. *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). This creates a rebuttable presumption the State exercised the peremptory strike in a discriminatory manner. *Id.* It is the State's burden to then rebut this presumption by offering a clear and reasonably specific neutral explanation for the strike. *Id.* This then places the burden on defendant to demonstrate the State's explanations are merely pretextual. *Id.*

First we note Defendant failed to meet his final burden by demonstrating any pretextuality of the State's proffered explanations. Furthermore, the State provided the court with sufficient neutral factors justifying the strikes. The trial court was not clearly erroneous in deciding the State's reasons for the

**1.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

strikes were neutral. *Id.* at 66. Point denied.

In his fourth point on appeal, Defendant argues the motion court erred when it denied his oral motion for a continuance made before his Rule 29.15 hearing so that he could subpoena witnesses for the hearing. We will not overturn a motion court's decision regarding one party's request for a continuance unless the court abused its discretion. *State v. Drewel,* 835 S.W.2d 494, 496 (Mo.App.E.D.1992). Furthermore, the party who requested the continuance must show he or she was prejudiced by the denial. *Id.* Defendant does not argue in his brief who these witnesses are or about what they would have testified other than stating the "witness or witnesses" were related to an alibi defense and would have contradicted the "testimony of the adverse party." This is insufficient to convince us of the necessity for a continuance. We know from reading the record that one of these witnesses was a co-worker who was allegedly with Defendant at a bar on one of the nights Defendant attempted to fraudulently obtain a controlled substance. However, Defendant had ample opportunity to find and subpoena these witnesses. The Rule 29.15 hearing occurred three months after Defendant requested said hearing and two months after the request was granted. Furthermore, as noted under Point VI, Defendant's attorney contacted this witness and discovered he could not provide a credible alibi. We find no abuse of discretion. Point denied.

Defendant alleges in his fifth point on appeal the motion court erred when it refused to allow Defendant to call the trial judge as a witness. As reasoning for his allegation of error, Defendant states his Sixth Amendment right to compulsory process was violated by the motion court's actions. Rule 29.15 hearings are civil in nature. Therefore, Defendant's Sixth Amendment rights were not invoked. *See, State v. Leisure,* 838 S.W.2d 49, 59 (Mo.App.E.D. 1992). Point denied.

Defendant's final point on appeal argues his trial counsel was ineffective for failing to adequately meet with him to learn of possible defenses; for failing to file a motion in limine or to object to the introduction of evidence that Didrex is a controlled substance, an amphetamine known as "speed," and that Defendant had previously attempted to obtain this drug through similar fraudulent prescriptions. We initially note Defendant alleges no trial court error in this point on appeal. *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978). We will assume, however, that Defendant argues the trial court erred in denying Rule 29.15 relief due to the above-noted alleged trial counsel errors.

We review the motion court's actions only to determine whether it acted clearly erroneously. *Antwine v. State,* 791 S.W.2d 403, 406 (Mo. banc 1990), *cert. denied,* 498 U.S. 1055, 111 S.Ct. 769, 112 L.Ed.2d 789 (1991); Rule 29.15(j). We presume its conclusions and findings to be correct. *Id.* Furthermore, we presume Defendant's attorney acted competently. *State v. Stepter,* 794 S.W.2d 649, 656 (Mo. banc 1990). Defendant has the burden to establish: (1) his attorney did not act using the degree of skill, care and diligence a reasonably competent attorney would have used under similar circumstances, and (2) he was thereby prejudiced. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987).

Defendant's attorney met with Defendant on approximately five to six occasions before trial. Each meeting lasted between one-half to one hour. Defendant has failed to establish this to be inadequate or that he suffered any prejudice thereby. The fact Defendant's attorney did not attempt to exclude the nature of the drug Didrex is also not a basis for finding ineffective assistance of counsel. The facts surrounding Defendant's attempts at filling the prescriptions, including the classification of the drug as an amphetamine; the incorrect manner in which the prescriptions had been filled out violating procedures for writing controlled substance prescriptions; and the fact that an employee remembered Defendant from previous attempts to fill similar prescriptions, were relevant in raising suspicions about the legitimacy of Defendant's prescriptions and the reliability of the witnesses' identification of Defendant.

Furthermore, while not included in his point relied on, Defendant's argument portion of Point VI claims his attorney was ineffective for failing to contact a potential alibi witness earlier and for failing to bring this witness in to testify at the Rule 29.15 hearing. Defendant's attorney did, however, contact this witness and learned he could not provide an alibi for the night in question. We presume the attorney's decision not to call a particular witness to testify is trial strategy and not reason to overturn a conviction unless clearly established to be otherwise. *State v. King,* 865 S.W.2d 845, 848 (Mo.App.W.D.1993). An attorney's decision whether to call a witness to testify as a matter of trial strategy is "virtually unchallengeable" on appeal. *Leisure v. State,* 828 S.W.2d 872, 875 (Mo. banc 1992), *cert. denied,* — U.S. —, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). Defendant's statement that prejudice is "suggest[ed]" since his attorney did not contact this witness until six months after the night of the crime is not enough to overcome the presumption of competence. Point denied.

We affirm.

CRANE, P.J., and CRANDALL, J., concur.