

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **AUSHENA WARREN,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD87128** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **JULY 15, 2025** |
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Platte County, Missouri**
The Honorable W. Ann Hansbrough, Judge

Before Division Two: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and W. Douglas Thomson, Judge

Aushena Warren appeals the judgment of the Circuit Court of Platte County, Missouri ("motion court"), denying her motion for post-conviction relief pursuant to Rule 24.035 following an evidentiary hearing. On appeal, Warren alleges that the motion court clearly erred in denying her claim of ineffective assistance of counsel because her counsel provided ineffective assistance by: (1) failing to present live testimony of character witnesses at her sentencing hearing instead of offering letters from twenty-one character witnesses; and (2) arguing for probation at sentencing instead of a term of years in prison. We affirm the judgment of the motion court.

**Factual and Procedural Background**

On June 13, 2017, Warren killed her eight-year-old son by drowning him in the bathtub and attempted to kill her six-year-old son by smothering him with a pillow. She then attempted to commit suicide by jumping off of a bridge, but she was rescued. A search of Warren's phone revealed recent internet searches of, "How long does it take to drown?"; "How long does it take to suffocate someone?"; and "mother murders children." Deleted searches made before February 8, 2017, for "Missouri women in prison"; and "How I became a murderer" were also found on Warren's phone.

Warren was charged with first-degree murder and abandonment of a corpse for drowning her older son, and first-degree assault for the smothering of her younger son. Warren's family originally hired a local attorney to represent her ("Local Counsel")[1] but later hired an attorney from Texas with experience handling similar cases ("Plea Counsel"); Local Counsel remained as local counsel and assisted Plea Counsel. Warren asserted a defense of not guilty by reason of mental disease or defect. Warren hired an expert to perform a mental evaluation ("Expert 1"), and he: spent about nine hours with her; reviewed her social media accounts; listened to recorded phone calls from the jail; spoke with collateral sources; reviewed police reports and witness interviews; reviewed Warren's medical records; reviewed electronic information from Warren's phone; and reviewed crime scene photos. An expert with the Missouri Department of Mental Health ("Expert 2"), as ordered by the court, also evaluated Warren. Expert 2 "came to almost

---

[1] Per Missouri Supreme Court Operating Rule 2.02(c)(3), we do not include names of witnesses other than parties.

2

the identical conclusions that [Expert 1] did without having reviewed [his] report first." These two experts concluded that at the time of the offenses, Warren, as a result of mental disease or defect, specifically Major Depressive Disorder and Bipolar Disorder, Type I, was incapable of knowing or appreciating the nature, quality, or wrongfulness of her actions. The State also hired an expert ("State's Expert") to evaluate Warren, and State's Expert opined that, while Warren suffered from mental illness, she was able to appreciate the nature, quality, and wrongfulness of her actions. The State indicated its intent to seek the death penalty for Warren.

Extensive plea negotiations ensued. A plea agreement was entered whereby the State agreed to amend the first-degree murder count to second-degree murder and to dismiss the other charges except for one count of first-degree assault. The State further agreed that the plea would be an "open plea," meaning both the State and Warren could argue for any sentence within the range of punishment for those two offenses. The State agreed it would not call its mental health expert, and Warren could call both her own expert and the expert from the DMH to testify. Finally, the State agreed that both parties would recommend that any sentences on those two counts be run concurrently rather than consecutively.

On August 27, 2021, Warren entered an open plea of guilty to one count of second-degree murder and one count of first-degree assault pursuant to the plea agreement. At the plea hearing, Warren was questioned about the performance of her counsel, and she responded that she was satisfied with her representation and that she did not have any criticisms or complaints about her counsel.

3

At the sentencing hearing, both Expert 1 and Expert 2 testified as to Warren's mental state, and their respective reports were entered into evidence without objection from the State. In addition, Plea Counsel presented letters from twenty-one individuals supporting Warren's character before she began experiencing symptoms of her mental illness, again without objection from the State. The State presented several victim impact statements. The State asked the court to impose a life sentence for second-degree murder and a fifteen-year sentence for assault to be run concurrently. The State argued extensively at the sentencing hearing that they would be able to prove this was first-degree murder and that Warren would then face the death penalty or life in prison without the possibility of parole, but they had made the plea offer to protect Warren's surviving son from having to testify about his mother killing his brother and attempting to kill him. The State argued that Warren had received all of the leniency she deserved when the State agreed to amend the charges pursuant to the plea agreement. Plea Counsel asked for probation to allow Warren to obtain mental health treatment, argued that the evidence supported that her actions were the result of her mental illness, and argued there was little if any chance of Warren reoffending.

The plea court sentenced Warren to life in prison for the count of second-degree murder and to fifteen years in prison for the first-degree assault, with the sentences to run concurrently, and the court denied probation. After pronouncing sentence, the court asked Warren whether she had anything to add to her previous responses concerning the performance of her counsel, and she responded that she did not.

Warren filed a timely motion for post-conviction relief, and her appointed counsel filed an amended motion, which the motion court found to be timely.[2] The amended motion alleged that Warren's counsel was constitutionally ineffective. The motion court found that the record refuted Warren's claims based on her responses to questions about her satisfaction with counsel at the plea hearing and the sentencing hearing. Nevertheless, the motion court held an evidentiary hearing on Warren's claims. Local Counsel testified in person, and Plea Counsel testified by deposition. Expert 1 also testified at the hearing, and three of Warren's friends and family testified. The motion court denied Warren's claims. This appeal follows.

**Standard of Review**

"This Court's review of a denial of post-conviction relief is limited to a determination of clear error in the circuit court's findings of fact and conclusions of law." *Swallow v. State*, 398 S.W.3d 1, 3 (Mo. banc 2013). There is clear error only when, after a review of the whole record, the appellate court is left with the definite and firm impression that a mistake has been made. *Cooper v. State*, 356 S.W.3d 148, 152 (Mo. banc 2011). When the post-conviction claims involve ineffective assistance of counsel after a guilty plea, the movant must show, by a preponderance of the evidence, that: (1) plea counsel's performance was deficient because he or she failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in

---

[2] The amended motion was timely under *Scott v. State*, WD86373, 2024 WL 4887460 (Mo. App. W.D. Nov. 26, 2024). Although the Supreme Court has granted transfer on *Scott*, we do not have the benefit of their ruling as of this date. Accordingly, we will treat the amended motion as timely for purposes of this opinion.

5

similar circumstances; and (2) the deficient performance prejudiced the movant as a result. *Cherco v. State*, 309 S.W.3d 819, 822 (Mo. App. W.D. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### Failure to Call Character Witnesses at Sentencing

Warren's first point on appeal is that the motion court clearly erred when it found that Warren's counsel was not ineffective in failing to call character witnesses to testify in person at her sentencing hearing instead of only producing letters written on her behalf. "An attorney's decision whether to call a witness to testify as a matter of trial strategy is 'virtually unchallengeable' on appeal." *State v. Nelson*, 895 S.W.2d 289, 295 (Mo. App. E.D. 1995). Plea Counsel testified by deposition that presenting letters to the court as opposed to calling live witnesses at sentencing was, indeed, a strategic decision.

> I wanted to stick with the written letters as opposed to calling individual witnesses, primarily to avoid the probability that the State would cross-examine those witnesses about the fact situation. And even though the fact situation was before the Court, I did not want to have that issue exacerbated by live testimony as opposed to handwritten letters. You can't cross-examine a letter.

Local Counsel agreed with Plea Counsel's strategy and testified that he did not believe that many of the people who wrote letters on Warren's behalf "knew many of the facts" surrounding her crimes and probably "wouldn't have liked to hear" them if confronted with them in cross examination.

This proved to be true, as one of Warren's friends called at the motion hearing testified that he had not been aware that Warren had sat on her eight-year-old son to drown him in the bathtub or that Warren had conducted a computer search for "How long

6

does it take to drown?" or her other computer searches. Another witness testified that she had not been aware at the time of Warren's sentencing and when she wrote the letter that Warren had also attempted to kill her six-year-old son. The motion court was present when these witnesses were questioned and concluded that Plea Counsel's decision not to call these witnesses in person in favor of having them submit letters was a reasonable strategic decision. The motion court's judgment cites *Eichelberger v. State*, 134 S.W.3d 790 (Mo. App. W.D. 2004), which also involved a counsel's strategic decision to present letters to the court at sentencing instead of calling live witnesses. We do not find the motion court's conclusion clearly erroneous. Because we find that Plea Counsel's strategic decision was reasonable, and therefore that his performance was not deficient, we need not address the prejudice prong of the analysis.

Point I is denied.

### Decision to Ask for Probation

Warren's second point on appeal is that the motion court clearly erred in finding that Plea Counsel was not ineffective in asking that Warren receive probation. Plea Counsel was hired by Warren because he had extensive experience, including in cases similar to hers. In his deposition testimony for the motion hearing, Plea Counsel was asked why he sought probation in this case:

Q: Yeah. How did you decide to ask for probation?

A: You know, a couple of things. She's eligible. And I think I would be remiss if I didn't ask for the least for my client, hoping that the Court would either grant probation or sentence her to a less period of time. But I think I would be remiss as a defense lawyer if I did not ask for probation when a person's eligible.

7

Q:  Yeah.  Are there situations where you would ask for something else, something—

A:  I can't recall in 52 years of—just tossing aside the concept of probation if a person is eligible.

Q:  Did you have any concerns about asking for probation in this case?

A:  I think if I didn't ask for probation, that would be concerning.  But I had no concern about requesting that, hoping that the Court would consider that.

Warren's argument, in essence, is that her crimes were so egregious that it was unreasonable for Plea Counsel to ask the court for probation but also that if Plea Counsel had asked for some term of years, she would have received a sentence lower than the maximum.  Apparently, Warren believes that Plea Counsel should have been able to thread the needle and ask for a sentence that was lower than the maximum, which she received, but just high enough to be "reasonable" and, as her brief states, not "undercut the sincerity of [her] remorse" for having "killed one of her children and attempted to kill another."  Although criminal defendants are entitled to effective counsel, their counsel need not be "omniscient" or "clairvoyant."  *McFadden v. State*, 553 S.W.3d 289, 305 (Mo. banc 2018).  Warren cites no authority stating that an attorney's request of a sentence within the range of punishment for the defendant's offenses was so unreasonably low as to constitute deficient performance.

Moreover, Warren shows no prejudice.  There was nothing the court said during sentencing and nothing about the sentencing court's pronouncement of sentence that

8

would indicate that the plea court was so outraged by Plea Counsel's request for a sentence within the range of punishment that it gave her a sentence higher than it would otherwise have been willing to pronounce.  The motion court concluded that Plea Counsel was not ineffective, and we do not find that conclusion to be clearly erroneous.

Point II is denied.

## Conclusion

For the reasons stated above, we affirm the judgment of the motion court.

_____
Gary D. Witt, Judge

All concur

9