STATE of Missouri, Plaintiff–
Respondent,

v.

Richard Lynn McCOY, Defendant–
Appellant.

No. 22964.

Missouri Court of Appeals,
Southern District,
Division Two.

July 24, 2000.

---

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for Respondent.

JAMES K. PREWITT, Judge.

Following jury trial, Appellant was convicted of receiving stolen property, and sentenced to ten years' imprisonment. On appeal, he presents one point, alleging error in prohibiting testimony that would have negated the *mens rea* to commit the crime. We find his point has merit, and reverse his conviction and sentence and remand to the trial court for a new trial.

On November 14, 1998, the owner of a 1989 maroon Oldsmobile 88 Royale automobile reported to the sheriff's department that his vehicle had been stolen. A deputy gathered information regarding the stolen vehicle and entered the vehicle identification number and license plate number into a law enforcement database. On the afternoon of November 16, 1998, Trooper Neil Poynter of the Missouri Highway Patrol was "working moving radar," meaning that he was checking the speed of vehicles as they passed him or came up behind him. The trooper clocked a maroon Oldsmobile coming toward him at the speed of sixty-five miles per hour on U.S. 61, south of Morley, Missouri. The trooper also noticed that the driver was not wearing a seat belt, so he decided to stop the vehicle.

When the trooper turned around his vehicle to initiate the stop, the Oldsmobile pulled into a private drive and two men exited the vehicle and ran into a wooded area. Trooper Poynter saw them briefly, and noticed that one was wearing a light blue/dark blue striped shirt, and the other was wearing dark-colored clothing and a dark-colored ball cap. Trooper Poynter "ran the plates" of the Oldsmobile and learned that the vehicle had been reported stolen. When Poynter looked inside the vehicle, he noticed the ignition had been "stripped," and the plastic casing on the steering column was loose.

The Scott County Sheriff's Department apprehended the suspects approximately one-half hour after they fled from Trooper Poynter. Poynter was able to identify the suspects by the shirts they were wearing. The passenger was Jason Gipson, and the driver was Appellant.

Appellant was taken to the sheriff's department and read his *Miranda* rights. He waived his rights and agreed to speak with Poynter. Appellant first denied he had been in the vehicle, but then admitted that he had been the driver and that he had run away because he did not have a driver's license and was afraid.

Poynter testified that he told Appellant that the vehicle was stolen. Appellant did not admit that he knew the car was stolen, but did say that he knew there was a "problem with the car." Poynter said Appellant stated that a friend of his, "Bud," had approached him and asked if he wanted a car. Appellant replied that he did, and the two of them went to the town of Blodgett, Missouri, to get the vehicle. Once in Blodgett, Bud left for a while and then returned with the maroon Oldsmo-

bile. Appellant gave Bud ten dollars for the car, and Bud told him that after he was "done with the car to be sure and burn the car." Appellant stated that there were no keys to the car because the ignition was "messed up." Appellant said that he had driven the car to Carbondale, Illinois, Sikeston, and Cape Girardeau. Appellant asserts that Trooper Poynter apparently misunderstood him; that he said "Bug," not "Bud."

Appellant claims the trial court erred in not allowing the testimony of his mother regarding information that could have allowed the jury to reasonably infer that Appellant did not know or believe that the car had been stolen. In an offer of proof, Ms. McCoy testified to the following: Jim Harris, Sr. operated a junkyard in Haywood City. One of Mr. Harris' sons was Jim Harris, Jr., who had the nickname of "Bug." Appellant was acquainted with Bug. Jim Harris, Sr. had a number of old cars in his junkyard, and in the summer of 1998, Ms. McCoy had sold a car to Mr. Harris, and Appellant knew of this. Bug would sometimes fix the cars on the lot and drive them. Ms. McCoy had seen Bug drive some of the junked cars. In the past, Appellant had borrowed cars from Bug at least once or twice. Ms. McCoy was aware that in September of 1998, Appellant had borrowed a car from Bug, and that she was upset about this because her son did not have a driver's license. When Ms. McCoy confronted her son about his borrowing of the car, he admitted that he had done so.

Appellant argues that the exclusion of this testimony deprived him of his right to present a defense in that this evidence was relevant and material because it would have negated an element of the offense of receiving stolen property, specifically that he possessed the property knowing or believing that it had been stolen. At trial, the court sustained the prosecutor's objection to the testimony "as to relevance as to whether or not that's what happened" on the day of the crime charged.

▆ The trial court enjoys broad discretion in determining the relevancy of evidence. *State v. Ray*, 945 S.W.2d 462, 467 (Mo.App.1997). The relevancy of evidence depends upon whether the evidence tends to confirm or refute a fact in issue, or to corroborate evidence that is relevant and pertains to the primary issue in the case. *Id.* An appellate court generally will not interfere with the trial court's ruling on the admission or exclusion of evidence, yet we will do so when there exists a clear showing of abuse of that discretion. *Id.* Competent evidence that negates a culpable mental state is admissible. *See State v. Horst*, 729 S.W.2d 30, 31 (Mo.App.1987).

▆ As a general rule, evidence explaining evidence previously introduced or showing that the inference arising or sought to be drawn therefrom is not warranted, is admissible. *State v. Taylor*, 929 S.W.2d 925, 928 (Mo.App.1996). This rule is especially applicable where the accused seeks to explain incriminating evidence introduced by the State. *Id.*

▆ In order to convict a defendant of receiving stolen property, the State must prove that a person has received, retained or disposed of property of another knowing that it has been stolen, or believing that it has been stolen. § 570.080.1, RSMo 1994.

▆ Appellant did not dispute that he was in possession of the vehicle, but he did dispute that he knew the vehicle was stolen. He claims that he did not have the culpable mental state required by the statute under which he was charged. The excluded evidence was relevant since it tended to refute a fact in issue. This testimony could have led the jury to ques-

tion whether Appellant knew the vehicle was stolen. To be relevant, testimony need not be conclusive, which this is not, but only tend to prove or disprove a fact in issue.

As we read the State's brief, it does not assert that the testimony was not relevant, but contends that the trial court did not abuse its discretion "because this testimony was only marginally relevant." Later in its brief, the State concludes that: "This testimony had only marginal relevance on the issue of whether [Appellant] had borrowed the maroon Oldsmobile from [Bug]." The State then asserts that, even if the trial court had abused its discretion in refusing the testimony, the conviction should still be affirmed because the evidence against Appellant "was overwhelming." Although there was substantial evidence of guilt, the evidence of whether Appellant knew the vehicle had been stolen was not "overwhelming." Because of the exclusion of this evidence, Appellant is entitled to a new trial.

The judgment is reversed and the cause remanded for a new trial.

CROW, J., and GARRISON, J., concur.