**STATE of Missouri, Respondent,**

v.

**Curtiz BROWN, Appellant.**

**No. WD 60482.**

Missouri Court of Appeals,
Western District.

May 13, 2003.

Sarah Weber Patel, Appellate Defender Office, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Munson Morris, Richard A. Starnes, Office of Attorney General, Jefferson City, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

A jury convicted Curtiz Brown of one count of forgery, RSMo § 570.090, as a prior and persistent offender. The circuit court sentenced Brown to six years in the custody of the Department of Corrections. Brown appeals, contending that the trial court erred in denying to the defense the introduction of evidence of numerous other forged checks from the victim's checking account.

We find that some of the evidence was relevant to refute the element in the State's case that Brown knew that the check was stolen. Reversed and remanded.

### Facts

On October 3, 1998, Mary Dunfield's home was burglarized, and some checks for her account at Central bank were sto-

len along with other items. On October 21, Dunfield learned that someone tried to pass a check that was stolen from her home. Curtiz Brown, a taxi cab driver, took one of Dunfield's checks to Central Bank to be cashed. The check was written to him for $85 with "transportation" written in the memo line. The check was signed "Mary F. Dunfield," but Dunfield testified that it was not her signature. A social security number was written on the check; however, Dunfield testified that it was not her social security number. Dunfield also testified that she had never met Brown and had not ridden in a taxi.

The bank teller testified that Brown came to her window to cash the check along with a young black male. Brown told the teller that he needed to cash a check. The teller asked Brown to endorse the check, and she watched as he signed his name. Brown presented two forms of identification to the teller. Both were taxi driver identification cards. The teller entered the account number of the check into her teller machine. The machine gave her a warning that there were stolen checks from the account. In addition, the teller was suspicious because the signature on the check did not look like Mary Dunfield's signature. The teller was familiar with Dunfield and her signature because Dunfield had been a customer for several years. The teller confirmed her suspicions on the bank computer system, which indicated the check Brown was attempting to cash was stolen. The teller pulled Dunfield's signature card and showed the check, Brown's identification, and the signature card to her supervisor. The teller's supervisor called the police. The supervisor also called Dunfield to determine if she had actually written the check. Brown never left the teller window during these events. The man who came in with Brown left. The police arrived fifteen minutes later and took Brown into custody.

Upon searching Brown, the police officer found a second check issued to Brown from Dunfield's account in Brown's back pocket. The second check was written for $110. Both checks had the same social security number written on them.

Brown told a detective that he received both of the checks from an Italian-looking lady named "Mary." Brown explained that he picked up "Mary" and a black male in his taxi and drove them to various places in the metropolitan area. Upon further questioning, Brown told the detective that he drove the couple to the County Club Plaza and Oak Park Mall. Brown said that the Italian woman told him that she needed assistance in moving the following day and she asked Brown to help her. Brown decided to help the woman move because he needed the money.

Brown indicated that the following day he helped the woman move to the 600 block of Benton in Kansas City. Brown did not provide the detective with a specific address. Brown also claimed that, after helping her, the woman wrote him a check for the taxi ride the day before and a check for assisting in the move that day. Brown told the detective he knew nothing about the burglary of Mary Dunfield or that her checks were stolen.

An expert in handwriting analysis determined that nothing written on the front of either of the checks was written by Brown.

### Point on Appeal

Brown contends the trial court erred in preventing the defense from presenting evidence that around the time Brown endorsed and presented a check that had been stolen in a burglary, multiple other businesses had endorsed and presented other stolen checks from the same account, most of which contained the same social security number provided on the checks

that Brown possessed. Brown argues the rulings violated his rights to due process of law and to a fair trial because the evidence of the other checks was logically and legally relevant to his defense that he did not know the checks he possessed were stolen and that he merely received them during the normal course of his own business as a cab driver. He further argues there was no evidence that he had any involvement or knowledge of these other checks despite the commonalities, thus showing that Brown was as innocent as the other businesses.

The State responds that the trial court did not abuse its discretion in excluding the evidence that other checks stolen in the burglary were passed to various businesses in the Kansas City area. The State argues that this collateral evidence was inadmissible, in that the evidence of the other checks, which attempted to implicate another person in the charged offense, was too remote and disconnected from the charged offense to be admissible.

### Standard of Review

 The trial court enjoys broad discretion in determining the relevancy of evidence. *State v. Ray*, 945 S.W.2d 462, 467 (Mo.App.1997). The relevancy of evidence depends upon whether the evidence tends to confirm or refute a fact in issue or to corroborate evidence that is relevant and pertains to the primary issue in the case. *Id.* While we generally will not interfere with the court's ruling on the admission or exclusion of evidence, we will do so when there exists a clear showing of abuse of that discretion. *Id.*

### Analysis

 Brown proffered, by way of an offer of proof, testimony from three witnesses concerning the other checks. The general tenor of the evidence was as follows. After the burglary, some of Dunfield's personal checks from her account at Central Bank of Kansas City had been passed at restaurants and department stores in the area by someone other than Dunfield. A total of thirty-seven stolen checks from Dunfield's account were passed. Thirty four of the checks (including the two that Brown possessed) had the same social security number written on them. A handwriting expert determined that the defendant wrote none of the thirty-seven checks. The detective who investigated the case against Brown never reviewed any of the thirty-five checks that were not at issue in this case. He never talked with Dunfield about any of the checks except the two Brown had. He never went to any of the stores or restaurants where those checks were passed to investigate.

Brown was charged with one count of forgery under § 570.090.1(4), RSMo 2000, which makes it a crime if a person "uses as genuine, or possesses for the purpose of using as genuine, or transfers with the *knowledge or belief* that it will be used as genuine, any writing or other thing ... which the actor **knows** has been made or altered in the manner described in this section." (emphasis added).

Brown argues the evidence of the other checks stolen from Dunfield and passed at businesses in the Kansas City area would show a jury that he, like the other businesses, received the checks through the normal course of his business and did not know they were stolen. He argues the evidence would have tended to prove that not only did he not know the checks from Dunfield's account were stolen, but that he was not involved in a "scam" as the State argued, because most of the other checks contained the same social security number as the ones Brown received, and there was no evidence Brown was involved or even

had knowledge of these other checks. He argues the evidence about the other businesses that cashed Dunfield's forged checks could have led a jury to question whether Brown knew Dunfield's checks were stolen.

The State argues the checks that were not involved in the transaction at issue in this case were collateral to the charged offense, as the other checks were written at other times and dates, and in other places as the checks in the charged offense. The State contends that because Brown did not present evidence that the same person wrote the checks that he possessed also wrote the other thirty-five checks, the evidence was not material and relevant.

Brown cites *State v. McCoy*, 69 S.W.3d 482, 484–85 (Mo.App.2000), to support his argument that it is reversible error for a trial court to exclude evidence that could have led a jury to question whether a defendant knew an item was stolen. In *McCoy*, the defendant was convicted of receiving stolen property. While driving a stolen vehicle the defendant was stopped by a Highway Patrol trooper. The defendant told law enforcement that a friend of his, Bud, gave him the car for ten dollars.

The trial court did not allow the defendant to present testimony of his mother regarding information that could have allowed a jury to reasonably infer that he did not know or believe that the car had been stolen. Specifically, defendant's mother would have testified that a man with the nickname "Bug" worked at his father's junkyard. The junkyard had a number of old cars. In fact, the defendant's mother sold one of her cars to the junkyard owner. The defendant's mother would have testified that Bug would sometimes fix the cars on the lot and drive them. The defendant had, in the past, borrowed cars from Bug at least once or twice. *Id.* at 484.

The Southern District reversed the defendant's conviction and remanded for a new trial holding the trial court erred in excluding the relevant testimony of defendant's mother because the excluded evidence negated the defendant's mental state. The State was required to prove that the defendant knew the car he was driving was stolen. Because the defendant disputed that he knew the vehicle was stolen and that he had the culpable mental state required by the statute, the excluded evidence was relevant to refute a fact in issue. The court noted, "To be relevant, testimony need not be conclusive, which this is not, but only tend to prove or disprove a fact in issue." *Id.* at 485.

Here, the State argues that *McCoy* does not offer Brown relief. The State maintains that unlike in *McCoy*, Brown did not establish a connection between the excluded evidence and his case because he did not show that the person who allegedly gave him the checks in question is the same person who used the other checks. The State relies upon those cases exemplified by *State v. Roussan*, 961 S.W.2d 831, 848 (Mo. banc 1998), holding that evidence is inadmissible that attempts to implicate another in the charged offense by proof of disconnected and remote acts outside of the crime itself. There, the defendant attempted to introduce evidence that another person had the opportunity and motive to commit the murder with which Roussan was charged. The court held that, to be admissible, such evidence had to show that the other person committed some act directly connecting him with the crime. *Id.* The State, then, argues that since it did not claim that Brown had any connection with either the burglary or the other checks that the evidence would be admissible only if Brown had shown that the same

person wrote the other checks as wrote the two given to him.

We disagree. The State's argument fails to consider that Brown's rejected evidence was not aimed at showing that someone else committed the crime of passing the bad check with which he was charged. Thus, the principle discussed in *Rousan* simply does not apply to this situation. The *Rousan* court, itself, recognized the objective of this principle. "Disconnected and remote acts, outside the crime itself cannot be separately proved for such *purpose* [pointing to someone other than the accused as the guilty person]; and evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible." *Id.* at 848 (emphasis added).

■ That was not the purpose of the evidence that Brown sought, unsuccessfully, to introduce. Rather, Brown sought to controvert an element of the offense with which he was charged. Thus, we must review the rejected evidence to determine whether it was logically relevant to his claimed lack of knowledge that the check was not genuine. Direct evidence of some elements of the crime of forgery is often not present. Many cases cite the general proposition that possession and an attempt to pass a forged check creates a permissible inference that the person in possession either forged it or knew that it was not genuine absent a explanation satisfactory to the jury. See, for example, our discussion in *State v. Scurlock*, 998 S.W.2d 578, 583–84 (Mo.App.1999), where we explained that this rule created a permissive inference and not a presumption. In effect, the State in this case used this permissive inference by showing that the checks were stolen and the signature was not that of the account owner. The jury evidently did not find Brown's explanation as to how he received the check presented to the bank to be satisfactory.

■ We believe that evidence of the other stolen checks was logically relevant to the issue of his knowledge. It is immaterial, in our view, that Brown was not aware of the other stolen checks that had been passed to other merchants. The jury was left with the impression that checks (the admitted evidence did not indicate more than two) were taken from the victims' house in a burglary only a few weeks before Brown appeared at the bank. The evidence then suggests that Brown presents one stolen check and has the other in his wallet. From the evidence, the jury quite likely inferred that Brown had all of the stolen checks in his possession. Although the State did not dispute Brown's expert witness evidence that Brown did not write on either of the checks, the State suggested that the man who accompanied Brown to the bank and left rather quickly was the actual forger. These permissible inferences and argument were likely particularly damaging. Evidence of the *other* checks passed at various establishments would have weakened these inferences and argument. Particularly, they would have weakened the State's suggestion about the man being the forger since the other checks were inferably written and presented at large chain stores by a woman with identification purporting to be the victim's. Evidence of the other checks would also have weakened the otherwise apparent inference that all the checks stolen in the burglary were found on Brown's person at the bank.[1] Evidence, to be relevant, need

**1.** Other reasonable possible inferences of the evidence would include that Brown had been arrested before having an opportunity to pass any other checks or that no other stolen

not be conclusive but only tend to prove or disprove a fact in issue. *McCoy,* 69 S.W.3d at 485. Moreover, evidence explaining previously introduced evidence or demonstrating that an inference arising from said evidence is not reasonable or warranted is admissible. *State v. Taylor,* 929 S.W.2d 925, 928 (Mo.App.1996). This proposition particularly applies where a defendant attempts to explain incriminating evidence. *Id.*

■ The excluded testimony in this case tended to prove that Brown was an innocent businessman, just like the department stores and restaurants, who unknowingly received a stolen check from a customer. In order to convict a defendant of forgery, the State must prove that a person uses as genuine any writing that the actor *knows* has been made or altered in a manner described in § 570.090, RSMo. The defendant did not dispute that he attempted to pass the check, but he did dispute that he knew the check was made by someone without authority. The excluded evidence was relevant to refute a fact in issue. The evidence about the other thirty-five checks passed from Dunfield's account could have led the jury to question whether Brown knew the checks were stolen and made by someone without authority. Although the evidence of the other checks is not conclusive as to Brown's knowledge, it tends to disprove a fact in issue, and is relevant evidence.

■ The exclusion of relevant and admissible evidence is not always reversible error. *State v. Ray,* 945 S.W.2d 462, 470 (Mo.App.1997). We will not disturb the trial court's ruling unless the abuse resulted in prejudice to the defendant.

checks had been passed because Brown was

*State v. White,* 835 S.W.2d 942, 947 (Mo. App.1992). Where the court is convinced that the error contributed to the result reached by the jury, the judgment should be reversed. *State v. Baker,* 741 S.W.2d 63, 67 (Mo.App.1987). Such is the case here.

■ The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *See Crane v. Kentucky,* 476 U.S. 683, 688, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). The denial of the opportunity to present relevant and competent evidence negating an essential element of the State's case may, in some cases, constitute a denial of due process. *State v. Ray,* 945 S.W.2d at 469. In the instant case, the exclusion of the proffered evidence concerning thirty-five of Dunfield's checks passed at various businesses in Kansas City without her authority deprived Brown of a fair trial. The evidence tended to negate the essential element of the State's case that Brown had knowledge the checks were issued without Dunfield's authority.

The court's exclusion of the relevant evidence was an abuse of discretion, which resulted in prejudice to Brown. Therefore, this case is reversed and remanded for a new trial.

PAUL M. SPINDEN, Judge and JAMES M. SMART, JR., Judge, concur.

not charged with any other offenses.