STATE of Missouri, Plaintiff–
Respondent,

v.

Tyrone GOODIN, Defendant–Appellant.

No. 26939.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 25, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 6, 2008.

Application for Transfer Denied
April 15, 2008.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel J. McPherson, Asst. Atty. Gen., Jefferson City, MO, for Plaintiff–Respondent.

William J. Swift, Columbia, MO, for Defendant–Appellant.

JEFFREY W. BATES, Chief Judge.

Tyrone Goodin (Defendant) was charged by amended information with four counts of committing the class C felony of forgery by passing four checks that had not been signed by an authorized person. *See* § 570.090 RSMo Cum.Supp. (2002). A jury found Defendant guilty on all counts. Because Defendant was alleged and found to be a persistent offender, the court assessed punishment. *See* § 558.016.3; § 557.036.2(2).[1] The court imposed a sentence of five years in prison on each count. The sentences on Counts I and II were to run concurrently with each other. The sentences on Counts III and IV were to run concurrently with each other, but consecutively to the sentences imposed for Counts I and II. On appeal, Defendant challenges the sufficiency of the evidence to support his convictions and contends the trial court committed plain error in submitting various instructions to the jury. Finding no merit in these contentions, we affirm.

### Point I

In Defendant's first point, he contends the trial court erred in denying Defendant's motion for judgment of acquittal at the close of all of the evidence. Because

---

**1.** All references to statutes are to RSMo (2000) unless otherwise specified. All references to rules are to Missouri Court Rules (2007).

Defendant challenges the sufficiency of the evidence to prove the charges, we must determine whether there was sufficient evidence to permit a reasonable juror to find guilt beyond a reasonable doubt. *State v. Belton,* 153 S.W.3d 307, 309 (Mo. banc 2005). We view the evidence and all reasonable inferences derived therefrom in a light most favorable to the verdict and disregard any contrary evidence and inferences. *Id.* Viewed in that light, the pertinent facts are summarized below.

In late September 2002, Defendant opened a checking account at Empire Bank (Empire) in Springfield, Missouri, and was issued an ATM card. Empire limited ATM cash withdrawals to $600 per transaction and $800 per day. Empire had banking facilities located on Kansas Avenue (Kansas branch), Glenstone Avenue (Glenstone branch) and National Avenue (National branch).

In November 2002, the Village of Gerster, Missouri (Gerster) had a checking account at Firstar Bank (Firstar). Three persons were authorized to sign checks from that account: Rodney Tillatson; Jan Echols and Glenda Hill (Hill). Hill was Gerster's secretary and treasurer. She wrote checks from the checking account to pay Gerster's utility bills. Hill had an adult daughter named Crystal Weaver (Weaver).

During this same time frame, Defendant resided at a home in Springfield, Missouri, with his adult daughter, Ruby Carroll (Carroll). Defendant also had an adult step-son named Harold Rucker (Rucker). He and Weaver were dating. Rucker had been arrested and was being held in the Greene County jail. Weaver, who was staying temporarily at Defendant's house, had some blank checks for Gerster's checking account in the glove compartment of her car. The vehicle was unlocked at all times while she was staying with Defendant.

On November 19, 2002, Defendant went to the Kansas branch at around 9:00 a.m. Using his ATM card, he withdrew $20 from his account. That reduced his account balance to $9.68. At around 10:00 a.m., Defendant returned to the same facility possessing a check drawn on Gerster's checking account at Firstar. Check No. 1328 in the amount of $600 was dated 11/19/02, made payable to Defendant and signed "Village of Gerster c/o Glenda Hill." This check was forged. Gerster did not owe Defendant this money, and Hill had neither signed the check nor authorized anyone else to do so on her behalf. Defendant endorsed his name on the back of the check and deposited it in his account.

On November 20, 2002, Defendant went to the Kansas branch shortly before 7:00 a.m. and withdrew $600 from his account using his ATM card. At around 8:30 a.m., Defendant returned to the same facility possessing a second check drawn on Gerster's checking account at Firstar. Check No. 1332 in the amount of $1,800 was dated 11/19/02, made payable to Defendant and signed "Village of Gerster c/o M. Weaver." This check was forged. Defendant was not owed this money, and no one named M. Weaver was authorized to sign checks on Gerster's behalf. Defendant endorsed his name on the back of the check and deposited it in his account.

On November 21, 2002, Defendant went to the Kansas branch at around 4:30 a.m. and withdrew $600 from his account using his ATM card. Defendant returned to that branch shortly after 4:00 p.m. and withdrew another $200 from his account with the ATM card. This was the maximum allowable daily cash withdrawal.

On November 22, 2002, Defendant went to the Kansas branch at around 4:00 a.m. Using his ATM card, he withdrew $600

from his account. One minute later, he withdrew another $150 from his account in the same manner. Shortly before 3:00 p.m., Defendant returned to the Kansas branch possessing a third check drawn on Gerster's checking account at Firstar. Check No. 1335 in the amount of $2,500 was dated 11/21/02, made payable to Defendant and signed "Village of Gerster c/o K. Weaver." This check was forged. Defendant was not owed this money, and no one named K. Weaver was authorized to sign checks on Gerster's behalf. Defendant endorsed his name on the back of the check and deposited it in his account. Immediately thereafter, Defendant withdrew an additional $50 from his account using his ATM card.

On November 23, 2002, Defendant went to the Kansas branch at around 4:00 a.m. He used his ATM card to withdraw $600 from his account. One minute later, he withdrew another $200 from his account in the same way. This was the maximum allowable daily cash withdrawal.

On November 25, 2002, Defendant went to the Glenstone branch at around 8:00 a.m. He had in his possession a fourth check drawn on Gerster's checking account at Firstar. Check No. 1333 in the amount of $1,650 was dated 11/22/02, made payable to Ruby Carroll and signed "Village of Gerster c/o K. Weaver." This check was forged. Carroll was not owed this money, and no one named K. Weaver was authorized to sign checks on Gerster's behalf. The back of the check bore an endorsement by "Ruby Carroll." Underneath this signature, Defendant endorsed his name and added his Empire account number. He was able to cash the check because his account still showed a balance of approximately $1,900, based on the forged checks previously deposited therein. Defendant then went to the National branch in possession of a fifth check drawn on Gerster's

checking account at Firstar. The teller declined to cash this $1,500 check. After receiving a telephone call from Empire, Hill realized that checks from Gerster's Firstar checking account were being forged. She had the account frozen and notified the police.

Thereafter, Defendant was charged with committing forgery in violation of § 570.090.1(1), which states:

1. A person commits the crime of forgery if, with the purpose to defraud, the person:

(1) Makes, completes, alters or authenticates any writing so that it purports to have been made by another or at another time or place or in a numbered sequence other than was in fact the case or with different terms or by authority of one who did not give such authority. . . .

The amended information charged Defendant with four counts of forgery: Count I, Check No. 1328; Count II, Check No. 1332; Count III, Check No. 1335; and Count IV, Check No. 1333. In relevant part, each count charged that Defendant "with the purpose to defraud, made a writing [followed by a detailed description of each individual check] so that it purported to have been made by authority of one who did not have such authority." Thus, to convict Defendant of violating § 570.090.1(1) in the manner charged in the information, the State had to prove beyond a reasonable doubt that he made a false writing. *State v. Scurlock*, 998 S.W.2d 578, 583 (Mo.App.1999). As used in § 570.090.1(1), the word "makes" has no statutory definition. Therefore, it is given its common sense, dictionary meaning. *State v. Skaggs*, 74 S.W.3d 282, 284 (Mo. App.2002). The dictionary definition of "make" includes to execute or sign. *Id.* at 284–85.

■ Defendant argues that his motion for judgment of acquittal should have been granted because the State failed to present any evidence that Defendant "made a writing" as to any of the four checks that formed the basis for the forgery charges against him. Specifically, Defendant argues that the State "presented no evidence that [Defendant] signed the checks while ordering payment on behalf of the Village." We find no merit in this argument.

Direct evidence to prove some elements of the crime of forgery is often unavailable. *State v. Brown,* 103 S.W.3d 923, 928 (Mo. App.2003); *State v. Gantt,* 504 S.W.2d 295, 299–300 (Mo.App.1973). It is a well-established principle of Missouri law that possession of, and an attempt to pass, a forged instrument gives rise to a permissible inference that the instrument was forged by the person possessing it. *Brown,* 103 S.W.3d at 928; *Scurlock,* 998 S.W.2d at 583; *State v. Chambers,* 898 S.W.2d 119, 121–22 (Mo.App.1995); *State v. Taylor,* 778 S.W.2d 276, 279 (Mo.App. 1989); *State v. Jones,* 703 S.W.2d 41, 42 (Mo.App.1985); *State v. Wade,* 696 S.W.2d 860, 862 (Mo.App.1985); *State v. Dennis,* 622 S.W.2d 404, 405–06 (Mo.App.1981). Here, the State presented evidence that: (1) Defendant had access to blank checks for Gerster's checking account during the relevant time frame; (2) he possessed Check Nos. 1328, 1332, 1335 and 1333 drawn on that account; (3) all four checks were forged; and (4) Defendant passed all four checks. Based upon this evidence, the jury could have reasonably inferred that Defendant forged, and therefore signed, all four checks. *See, e.g., Scurlock,* 998 S.W.2d at 584 (jury could reasonably infer that defendant made a false writing based on evidence that he possessed and attempted to pass a forged check and that he had access to the car from which the check was taken); *Chambers,* 898 S.W.2d at 122 (jury could reasonably infer that defendant made a false writing based on evidence that he possessed Carney's check, his signature was forged, defendant cashed the check through an agent, and defendant was at Carney's house shortly before the check was stolen). Consequently, the State presented sufficient evidence to prove beyond a reasonable doubt that Defendant made a false writing.[2]

Of course, the jurors could have decided not to draw this permissible inference if they had been presented with a satisfactory explanation for Defendant's conduct. *See Brown,* 103 S.W.3d at 928. After the State rested, Defendant called Weaver as a witness. The gist of her testimony was that she had devised a plan to forge checks on the Gerster checking account in order to obtain money to get Rucker out of jail because he could not make bail. At trial, Weaver claimed that she had written Check No. 1328. She denied writing the other three checks. She also admitted that she told police "several stories" when she was interviewed about the forged checks. For example, she originally lied to police by saying that Hill had written a check to Defendant for work he had done for the village. Finally, during the State's case-in-chief, the jury had been presented with evidence that Rucker had been released from jail on November 20, 2002 after posting a $100,000 surety bond. Thus, two of the forged checks were deposited by Defendant after Rucker was out of jail. Moreover, Defendant was able to obtain a total of $4,650 in cash using the forged checks. All but $600 of that sum was obtained after Rucker's release. Af-

---

**2.** In light of this holding, it is unnecessary to address Defendant's alternative argument that he did not make a false writing when he endorsed his name on the back of the checks in order to pass them.

ter weighing the evidence and assessing the credibility of the witnesses, the jury decided that Defendant's explanation of events was not satisfactory. We defer to that decision. *Wade,* 696 S.W.2d at 862. Accordingly, the trial court did not err in overruling Defendant's motion for judgment of acquittal at the close of all of the evidence. Point I is denied.

### Point II

In Defendant's second point, he contends the trial court committed plain error in giving Instruction No. 8. The following additional facts are relevant to our discussion of this point. Each count of the amended information included an allegation that Defendant acted with others in committing the forgeries. At trial, the court gave Instruction No. 8, which stated:

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with the other persons with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

The four forgery counts were submitted to the jury via verdict-directing Instruction Nos. 12, 14, 16 and 18. None of these instructions, however, submitted an accomplice liability theory. For example, Instruction No. 12 stated:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 19th day of November, 2002, in the County of Greene, State of Missouri, the defendant made a writing, check number 1328, drawn on [the number of Gerster's checking account] with Firstar Bank in

the name of the Village of Gerster, in the amount of $600.00 and payable to Tyrone Goodin, so that it purported to have been made by authority of one who did not give such authority, and

Second, that defendant did so with the purpose to defraud,

then you will find the defendant guilty under Count I of forgery.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Thus, the jury had to find that Defendant committed all of the elements of the offense of forgery in order to return a guilty verdict as to Count I. Instruction Nos. 14, 16 and 18 followed the same pattern to submit Counts II–IV, except that the first paragraph of each instruction was modified to hypothesize the specific facts relevant to Check Nos. 1332, 1335 and 1333.[3]

Defendant did not object to any of these instructions at the instruction conference or in his motion for new trial. On appeal, Defendant contends that giving Instruction No. 8 resulted in a manifest injustice because it contradicted all four verdict-directing instructions, which required the jury to find Defendant guilty only on a principal liability theory.

 An appellate court is authorized, in its discretion, to review for plain error affecting a defendant's substantial rights "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20; *State v. Wurtzberger,* 40 S.W.3d 893, 897 (Mo. banc 2001). The burden of proving the existence of such a manifest injustice or miscarriage of justice rests on the defendant. *State v. Cole,* 844 S.W.2d 493, 500 (Mo.App.1992).

---

**3.** For example, Instruction No. 18 was modified to hypothesize that Check No. 1333 was

made payable to Ruby Carroll.

Instruction No. 8 was drawn from MAI–CR 3d 304.04, but only the first paragraph of this pattern instruction was used. According to the Notes on Use, this introductory paragraph is not to be given as a stand-alone instruction "EXCEPT when all counts and verdict directing instructions submitted are based on accessorial liability . . . ." Notes on Use 3, MAI–CR 3d 304.04. Here, *none* of the verdict-directing instructions were based on accessory liability. Therefore, the giving of Instruction No. 8 was error because it violated the Notes on Use for MAI–CR 3d 304.04. Rule 28.02(f).

▮ Nevertheless, the prejudicial effect of this error must be judicially determined. *State v. Cooper*, 215 S.W.3d 123, 125 (Mo. banc 2007). Because Defendant did not preserve the error with a timely objection, he is not entitled to any presumption that the error was prejudicial. *State v. Goucher*, 111 S.W.3d 915, 918–19 (Mo.App.2003). Instead, Defendant bears the burden of showing that plain error resulted therefrom. *Id.* at 919. "Instructional error seldom rises to the level of plain error." *State v. O'Toole*, 83 S.W.3d 622, 630 (Mo.App.2002); *State v. Thomas*, 75 S.W.3d 788, 791 (Mo.App.2002). This is because a mere demonstration of prejudice from the error is insufficient. *See State v. Hagan*, 113 S.W.3d 260, 267 (Mo.App. 2003). Instead, a defendant must meet the higher burden of demonstrating "that the trial court so misdirected or failed to instruct the jury that it is evident that the instructional error affected the jury's verdict." *State v. Baker*, 103 S.W.3d 711, 723 (Mo. banc 2003); *State v. Nolan*, 872 S.W.2d 99, 103 (Mo. banc 1994).

▮ An appellate court will be more inclined to find that an erroneous instruction affected the jury's verdict when the State was excused from its burden of proof on a contested element of the crime. *See*

*State v. Roe*, 6 S.W.3d 411, 415 (Mo.App. 1999). That did not occur here. For the reasons already stated in our discussion of Point I, the jury was presented with sufficient evidence to find Defendant guilty of forgery as a principal. Moreover, the four verdict-directing instructions required the jury to find Defendant guilty solely on that basis. By submitting these instructions instead of ones submitting accomplice liability, the State assumed the higher burden of proving Defendant's guilt as a principal based on his own conduct. *See State v. Thompson*, 781 S.W.2d 247, 248–49 (Mo. App.1989). At Defendant's request, the trial court also submitted a converse to each verdict-directing instruction which required the jurors to find Defendant not guilty "[i]f you have a reasonable doubt as to whether [Defendant] knew the check was forged and made the writing with the purpose to defraud . . . ." We presume the jury followed the verdict-directing and converse instructions in rendering its verdicts. *State v. Hashman*, 197 S.W.3d 119, 134 (Mo.App.2006); *State v. Love*, 88 S.W.3d 511, 520 (Mo.App.2002). In contrast, Instruction No. 8 did not require the jury to make any findings at all, and this instruction correctly informed the jury that Defendant was responsible for his own conduct.

After reviewing the record, it is not evident that the instructional error in giving Instruction No. 8 affected the jury's verdicts. Therefore, Defendant has failed to meet his burden of demonstrating the existence of a plain error that will result in a manifest injustice if left uncorrected. Point II is denied.

*Point III*

▮ In Defendant's third point, he contends the trial court committed plain error in giving Instruction Nos. 12, 14, 16 and 18 because none of these verdict-directing instructions were properly modified to submit an accomplice liability theory. Once

again, Defendant has failed to meet his burden of demonstrating plain error warranting relief on appeal.

Each verdict-directing instruction hypothesized that Defendant was guilty of forgery as a principal based on his own conduct. For the reasons set out in our discussion of Point I, there was sufficient evidence for the jury to so find. Defendant has not identified any errors concerning the manner in which the jury was instructed on the theory of principal liability. While Defendant presented evidence that Weaver was involved in the forgeries (which the jury was not required to believe), that did not require any modification of the verdict-directing instructions:

> Since MAI–CR 3d 304.04 involves imputing the conduct of another person to the defendant, it need not be used where the evidence shows that the defendant, by his own conduct, committed all the elements of the offense and there is evidence that another person was involved. In such a case, the ordinary verdict directing instruction for the offense can be used requiring a finding that the defendant committed all the elements of the offense.

Notes on Use 4, MAI–CR 3d 304.04. Instruction Nos. 12, 14, 16 and 18 complied with this Note on Use by requiring the jury to find that Defendant personally committed all elements of the offense for each count of forgery. For the reasons set out in our discussion of Point II, the only instructional error in the case at bar was in giving Instruction No. 8. Point III is denied.

The judgment of the trial court is affirmed.

LYNCH and BURRELL, JJ., Concur.